COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Fitzpatrick, Judges Elder and Clements
Argued at Richmond, Virginia

JOHN H. ROLLINS, S/K/A
 JOHN HENRY ROLLINS
                                              OPINION BY
v.   Record No. 2378-00-2     JUDGE JEAN HARRISON CLEMENTS
                                          OCTOBER 30, 2001
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF ORANGE COUNTY
                   Daniel R. Bouton, Judge

            Charles W. Bowman (Higginbotham & Bowman,
            P.L.C., on brief), for appellant.

            H. Elizabeth Shaffer, Assistant Attorney
            General (Mark L. Earley, Attorney General, on
            brief), for appellee.


     John H. Rollins was convicted in a bench trial of driving

under the influence of alcohol in violation of Code § 18.2-266,

his fourth such offense within ten years.  The sole issue on

appeal is whether the trial court erred in admitting into

evidence the certificate of breath analysis where the machine

used to measure the alcohol content of Rollins' breath had not

been calibrated in strict compliance with the regulations

established by the Department of Criminal Justice Services,

Division of Forensic Science.  Finding no error, we affirm the

conviction.

BACKGROUND

The facts before us are not in dispute.  On February 5, 2000, Gordonsville Police Officer John Apperson was on routine patrol when he received a radio call reporting a Ford Ranger pickup truck driving erratically on Main Street.  Apperson located the identified Ford Ranger pickup truck and followed it.  He observed it "cross[] the yellow line a couple of times" and "cross[] over the white line almost striking the guard rail."  Apperson activated his vehicle's emergency lights, and the pickup truck pulled to the side of the road.  Apperson identified Rollins as the driver of the pickup truck.

When Apperson approached the pickup truck, Rollins rolled down his window.  The officer immediately smelled "a strong odor of alcoholic beverage."  Apperson asked Rollins for his license and registration, which Rollins provided.  When asked how much he had had to drink, Rollins replied that he had had "two beers."  Apperson told Rollins to get out of the pickup truck.  Upon exiting the pickup truck, Rollins stumbled and had to be steadied as he walked to the back of the truck.  Apperson observed that Rollins' face was "very red" and his eyes were "bloodshot and glassy."

Apperson administered four field sobriety tests.  When asked to recite the alphabet, Rollins could not.  Likewise, he failed to successfully perform the "finger-touch" test, the "one-legged-stand" test, and the "finger-to-nose" test.

Apperson then gave Rollins a preliminary breath test. Following the completion of that test, Apperson read Rollins the implied consent law, placed him under arrest, and drove him to the Central Virginia Regional Jail.

There, Deputy Duane Washington, of the Orange County Sheriff's Department, read Rollins the implied consent law, obtained Rollins' consent, and administered a breath-analysis test to Rollins using the Intoxilyzer 5000 machine. According to the machine, Rollins, who had had nothing to eat or drink between the time he was stopped by Officer Apperson and when he was given the breath-analysis test at the jail, had a blood alcohol content of ".18 grams per 210 liters of breath."

At trial, Deputy Washington, who was licensed to conduct breath-test analyses, explained that, in administering the breath-analysis test to Rollins, he followed the procedure set forth in the instruction manual published by the Division of Forensic Science specifically for the Intoxilyzer 5000 machine. Washington affirmed that he completed, and the machine performed, all of the steps exactly as outlined in the manual. He swiped his operator identification card through the machine's card reader. Using the machine's keyboard, he entered his name and information and Rollins' name and information. The machine automatically performed several internal diagnostic tests on its own, including a "PROM-check" test and a "circuitry-check" test. The machine took an "air blank" to determine the alcohol content

of the surrounding air and ran a "simulator" test with a control sample.  This, according to Washington, is also referred to as a "validation."  The machine took another "air blank" to confirm the alcohol content of the air in the room.  Rollins then blew as directed into the machine's mouthpiece.  The machine took another "air blank" to reconfirm the alcohol content of the room air.  Finally, Rollins blew again as directed into the machine's mouthpiece, and the test was concluded.  As each step of the test was completed, Deputy Washington checked the corresponding number on the Department of Criminal Justice Services, Division of Forensic Science's operational checklist for the Intoxilyzer 5000.

Following the breath-analysis test, the Intoxilyzer 5000 machine printed the aforementioned result onto a "Department of Criminal Justice Services, Division of Forensic Science Certificate of Blood Alcohol Analysis."  Deputy Washington completed the certificate of breath analysis by executing the certificate's attestation clause, which read:

> I certify that the above is an accurate
> record of the test conducted; that the test
> was conducted with the type of equipment and
> in accordance with the methods approved by
> the Department of Justice Services, Division
> of Forensic Science; that the test was
> conducted in accordance with the Division's
> specifications; that the equipment upon
> which the breath test was conducted has been
> tested within the last six months and found
> to be accurate; that prior to administration
> of the test the accused was advised of his
> right to observe the process and see the

blood alcohol reading on the equipment used to perform the breath test, and that I possess a valid license to conduct such test, given under my hand this 5th day of February, 2000.

At trial, the Commonwealth offered the certificate of breath analysis for admission into evidence under Code § 18.2-268.9. Rollins objected to its admission, arguing that the Intoxilyzer 5000 machine used to perform the breath-analysis test had not been properly calibrated in strict compliance with administrative regulation 1 VAC 30-50-90(C). The trial court overruled Rollins' objection and admitted the certificate into evidence, finding that, although the machine had not been calibrated in compliance with 1 VAC 30-50-90(C), it had been properly calibrated under 1 VAC 30-50-90(A). Such compliance, the court concluded, was sufficient because the regulation was procedural, rather than substantive, in nature. The trial court subsequently convicted Rollins, who presented no evidence in his defense, of driving under the influence of alcohol in violation of Code § 18.2-266. Because it was Rollins' fourth such offense within ten years, the offense was a felony under Code § 18.2-270(C).

## ANALYSIS

On appeal, Rollins concedes that, in administering the subject breath-analysis test, Deputy Washington followed the procedures set forth in the instruction manual for the Intoxilyzer 5000 and, thus, complied with 1 VAC 30-50-90(A).

Rollins contends, however, that the certificate of breath analysis was improperly admitted by the trial court because no validation test with a control sample was performed on the Intoxilyzer 5000 machine immediately following the analysis of his breath, as specifically required by 1 VAC 30-50-90(C). Compliance with the regulation, Rollins argues, is mandatory and Deputy Washington's failure to do so rendered the certificate of breath analysis inadmissible.

The Commonwealth concedes that Deputy Washington did not comply with 1 VAC 30-50-90(C). The Commonwealth contends, however, that, because the breath-test methods set forth by the Department of Criminal Justice Services, Division of Forensic Science in subsections (A) and (C) of 1 VAC 30-50-90 were procedural in nature and not substantive, and because Deputy Washington substantially complied with those prescribed methods, the trial court correctly ruled that the certificate of breath analysis was admissible. We agree with the Commonwealth.

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988). "[A] trial court 'by definition abuses its discretion when it makes an error of law.'" Shooltz v. Shooltz, 27 Va. App. 264, 271, 498 S.E.2d 437, 441 (1998) (quoting Koon v. United States, 518 U.S. 81, 100 (1996)). In determining whether

the trial court made an error of law, "we review the trial court's statutory interpretations and legal conclusions de novo."  Timbers v. Commonwealth, 28 Va. App. 187, 193, 503 S.E.2d 233, 236 (1998).

Code § 18.2-268.9 provides that, "[t]o be capable of being considered valid as evidence in a prosecution under § 18.2-266 . . ., chemical analysis of a person's breath shall be performed . . . in accordance with methods approved by the Department of Criminal Justice Services, Division of Forensic Science."  As applicable to this case, the breath-test methods approved by the Department of Criminal Justice Services, Division of Forensic Science were set forth in 1 VAC 30-50-90,[1] which provided, in pertinent part, as follows:

> The division approves the following breath test methods and procedures:
>
> A.  All breath test devices shall be operated in accordance with those sections of the instructional manual published by the division that are applicable to the particular breath test device.  Licensees shall follow any additional instructions or modifications of instructions published by the division in supplements to the foregoing instructional manual.
>
> \*       \*       \*       \*       \*       \*       \*
>
> C.  The licensee shall verify that the breath test device is properly calibrated and in proper working order by conducting a room air blank analysis prior to analysis of the breath of the person and by conducting a

---

[1] 1 VAC 30-50-90 has since been amended and renumbered as 6 VAC 20-190-110(3).

> validation test with a control sample
> immediately following the analysis of the
> breath of the person.

Code § 18.2-268.11 provides, in pertinent part:

> The steps set forth in §§ 18.2-268.2
> through 18.2-268.9 relating to taking,
> handling, identifying, and disposing of
> blood or breath samples <u>are procedural and
> not substantive.  Substantial compliance
> shall be sufficient</u>.  Failure to comply with
> any steps or portions thereof . . . shall
> not of itself be grounds for finding the
> defendant not guilty, but shall go to the
> weight of the evidence and shall be
> considered with all the evidence in the
> case; however, the defendant shall have the
> right to introduce evidence on his own
> behalf to show noncompliance with the
> aforesaid procedures or any part thereof,
> and that as a result his rights were
> prejudiced.[2]

(Emphasis and footnote added.)

We conclude, reading Code §§ 18.2-268.9 and 18.2-268.11 together, that the legislature did not intend that strict compliance with the breath-test methods approved by the Department of Criminal Justice Services, Division of Forensic Science be a prerequisite for the admission into evidence of the results of a breath-analysis test.  Substantial compliance with those methods is sufficient.  <u>See</u> <u>Snider v. Commonwealth</u>, 26 Va. App. 729, 732, 496 S.E.2d 665, 666 (1998).  Accordingly, 1 VAC 30-50-20[3] provided:

---

[2] We note, as an aside, that Rollins introduced no evidence showing that his rights were prejudiced.

[3] 1 VAC 30-50-20 is now 6 VAC 20-190-20.

These regulations and the steps set forth herein relating to the taking, handling, identification and disposition of breath samples, the testing of such samples, and the completion and filing of any form or record prescribed by these regulations are procedural in nature and not substantive. Substantial compliance therewith shall be deemed sufficient.

The sole remaining issue before us, then, is whether Deputy Washington substantially complied with the breath-test methods approved by the Department of Criminal Justice Services, Division of Forensic Science when he, in conducting the breath-analysis test on Rollins using the Intoxilyzer 5000, complied with 1 VAC 30-50-90(A), but not with 1 VAC 30-50-90(C). We hold that he did.

"[I]n determining the question of substantial compliance, 'a minor, trivial difference can be tolerated whereas a material difference cannot.'" Snider, 26 Va. App. at 732, 496 S.E.2d at 666 (quoting Akers v. James T. Barnes of Washington, D.C., Inc., 227 Va. 367, 370, 315 S.E.2d 199, 201 (1984)). Furthermore, as the Supreme Court noted in Coleman v. Pross, 219 Va. 143, 158, 246 S.E.2d 613, 622 (1978), "[t]he principle of substantial compliance, which is predicated upon a failure of strict compliance with applicable requirements, operates to replace the protective safeguards of specificity with a less exacting standard of elasticity, in order to achieve a beneficial and pragmatic result."

Here, requiring strict compliance with both 1 VAC 30-50-90(A) and 1 VAC 30-50-90(C) would lead to a decidedly impractical result.  In fact, as applied to the Intoxilyzer 5000 machine, 1 VAC 30-50-90(A) and 1 VAC 30-50-90(C) inherently conflict because an operator cannot strictly comply with both.  The Intoxilyzer 5000 instruction manual, written and published by the Department of Criminal Justice Services, Division of Forensic Science specifically to show operators how to obtain the most reliable and accurate results using the Intoxilyzer 5000 machine, does not provide or allow for a validation test with a control sample immediately following the breath analysis.  That test, according to the Intoxilyzer 5000 manual, is to be performed by the machine shortly before the analysis.

Moreover, once the operator conducting the breath-analysis test keys in the requested information about the subject, the Intoxilyzer 5000 machine functions automatically.  With no further human intervention, the machine performs several internal tests — including the validation test — before the subject blows into the mouthpiece.  The automatic nature of the machine does not permit the operator to deviate from the set procedure to conduct a validation test after the breath analysis is performed.

Thus, an operator who, like Deputy Washington, follows the Intoxilyzer 5000 manual in accordance with subsection (A) of 1 VAC 30-50-90 cannot perform the additional step required by

subsection (C) of 1 VAC 30-50-90. Furthermore, even if the operator could somehow override the set procedure and conduct a validation test immediately after the analysis, that operation would not be in accordance with the instruction manual, as required by 1 VAC 30-50-90(A).

Hence, we conclude, upon our review of the record, that to rule as Rollins suggests we do would lead to absurd consequences inconsistent with the beneficial and pragmatic result intended by the legislature. See Branch v. Commonwealth, 14 Va. App. 836, 419 S.E.2d 422 (1992). We further conclude that whether the validation test is performed shortly before the breath analysis, as required by the manual, or immediately after the breath analysis, as required by 1 VAC 30-50-90(C), is a trivial difference. Each achieves the same purpose of ensuring that the breath-test machine is "properly calibrated and in proper working order." 1 VAC 30-50-90(C).

We hold, therefore, that Deputy Washington, having administered the breath-analysis test to Rollins in accordance with 1 VAC 30-50-90(A), substantially complied with the breath-test methods approved by the Department of Criminal Justice Services, Division of Forensic Science. Accordingly, the resulting certificate of breath analysis was admissible as valid evidence under Code § 18.2-268.9, and the trial court did not abuse its discretion in admitting it.

For these reasons, we affirm Rollins' conviction.

<u>Affirmed.</u>