HUFF, J.,
dissenting.
I respectfully dissent because the Salaried Savings Plan is, as the majority concluded, governed by ERISA, which preempts state law. Boggs v. Boggs, 520 U.S. 833, 841, 117 S.Ct. 1754, 1760, 138 L.Ed.2d 45 (1997) (“ERISA’s express preemption clause states that the Act ‘shall supersede any and all State laws insofar as they may now or hereafter relate to any *767 employee benefit plan....’ [29 U.S.C.] § 1144(a).”).[8] I depart from the analysis of the majority in their conclusion that the “Dominion Salaried Savings Plan is ... excepted by the statutory language” of 29 U.S.C. § 1055(b)(l)(C)(i), and is therefore alienable under state law. As suggested by its title, the exception provision of § 1055 relates to retirement plan annuities. The statutory language governing annuities is excepted when “the participant’s nonforfeitable accrued benefit ... is payable in full, on the death of the participant to the participant’s surviving spouse.” 29 U.S.C. § 1055(b)(l)(C)(i) (emphasis added). Moreover, the concession made by Mr. Griffin’s estate was not that the Salaried Savings Plan was exempt from the federal act and therefore was alienable under state law. Rather, Mr. Griffin’s estate was asserting that since the benefit is payable to the surviving spouse, in a lump sum, the statutory safeguards relating to annuities are not applicable and the surviving spouse is protected in the absence of a QDRO or spousal consent.[9] Being excepted from § 1055 does not mean that the benefit is exempted from the policy or *768 provisions of ERISA. Boggs, 520 U.S. at 843, 117 S.Ct. at 1761.
Mr. Griffin was employed by Dominion Virginia Power at the time of his divorce and until his death on May 26, 2012. Griffin was obligated, by the terms of the Griffin DRO, to name his two children as co-beneficiaries under any 401(k) and other similar plans. As part of his employment benefits, he participated in a pension plan, the Dominion Power Pension Plan, and a 401(k) type of plan, the Dominion Salaried Savings Plan. Griffin, however, did not comply with the terms of the Griffin DRO by naming his children as co-beneficiaries of any retirement benefits. Rather, when he remarried after his divorce from appellant, he named his new wife, Kimberly Cowser-Griffin (“Cowser-Griffin”), as the primary beneficiary and named his children as contingent beneficiaries. In the trial court, appellant requested a QDRO to enforce the terms of the Griffin DRO as applied to the Dominion Salaried Savings Plan.
As an employee benefit plan, the Plan is governed by the Employee Retirement Income Security Act (“ERISA”) and Dominion’s plan documents.[10] Dominion’s plan documents provide the specific payout method employed by the Plan Administrator to distribute benefits, requiring that the surviving spouse receive the funds unless written spousal consent is obtained prior to retirement or death. The Plan Administrator may deviate from this payout method only in response to a QDRO.
Fourteen years after the Griffin DRO was entered and approximately three months after Griffin’s death, appellant filed a motion in the trial court seeking to reinstate the prior divorce proceedings and enter the proposed Griffin QDRO, preserving the beneficiary status for her children under the Plan. Prior to this motion, neither appellant nor her children had notified the Dominion Plan Administrator of any alleged *769 interest in the benefits outlined in the Griffin DRO. Additionally, Cowser-Griffin did not provide spousal consent for any change in beneficiaries prior to Griffin’s death. On May 6, 2018, the trial court denied appellant’s motion, holding that the Plan’s retirement benefits vested entirely in CowserGriffin as the designated beneficiary and surviving spouse under the Plan at Griffin’s death.
“In determining whether the trial court made an error of law, ‘we review the trial court’s statutory interpretations and legal conclusions de novo.’ ” Rollins v. Commonwealth, 37 Va.App. 73, 78-79, 554 S.E.2d 99, 102 (2001) (quoting Timbers v. Commonwealth, 28 Va.App. 187, 193, 503 S.E.2d 233, 236 (1998)).
On appeal, appellant contends that the trial court erred by denying her motion for entry of a qualified domestic relations order seeking to reinstate her children’s beneficiary status as required under the Griffin DRO. Specifically, she asserts that her children’s rights vested when the trial court entered the Griffin DRO; thus, the entry of a posthumous QDRO would enforce rights that vested prior to Griffin’s death. In support of her assertion, she argues that because ERISA stipulates no deadline for a QDRO’s entry after a plan participant’s death, ERISA impliedly authorizes posthumous QDROs. She also states that the entry of a posthumous QDRO would not impair the Plan’s administration because the Plan benefits are distributed in a lump sum to the beneficiaries, as opposed to an annuity payment. Alternatively, she argues that this Court should characterize the Griffin DRO as a QDRO and enter it nunc pro tunc to the date of the trial court’s entry of the Griffin DRO. Cowser-Griffin intervened on behalf of the Estate of David Griffin and argues that her rights to the benefits vested upon Griffin’s death because she was the surviving spouse and did not consent to any assignment of benefits. Accordingly, she asserts that the entry of a posthumous QDRO would divest her right as the surviving spouse. She also argues that this Court should not consider the Griffin DRO to be a QDRO and enter it nunc pro tunc because of its failure to conform to statutory requirements.
*770 ERISA’s purpose is “to ensure the proper administration of pension and welfare plans, both during the years of the employee’s active service and in his or her retirement years.” Boggs, 520 U.S. at 889, 117 S.Ct. at 1759. To effectuate this administration, ERISA implemented a preemption mandate, “superseding] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan” governed by ERISA. 29 U.S.C. § 1144(a) (2006). Although ERISA requires that “benefits provided under the plan may not be assigned or alienated,” 29 U.S.C. § 1056(d)(1), the Retirement Equity Act of 1984 (“REA”), Pub.L. 98-397, 98 Stat. 1426, amended ERISA to allow designation of a beneficiary other than the surviving spouse in two narrow circumstances: first, pursuant to a QDRO, 29 U.S.C. § 1056(d)(3)(A), and second, through spousal consent, 29 U.S.C. § 1055(c)(2)(A).
A DRO is defined as “any judgment, decree, or order (including approval of property settlement agreement) which ... relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant.” 29 U.S.C. § 1056(d)(3)(B)(ii)(I). Conversely, a DRO is deemed to be a “qualified” DRO when it “creates or recognizes the existence of an alternate payee’s rights to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan,” and it meets certain substantive and specificity requirements. 29 U.S.C. § 1056(d)(3)(B)®. It is the responsibility of the Plan Administrator “after receipt of [a DRO], ... [to] determine whether such order is a qualified domestic relations order and notify the participant and each alternate payee of such determination.” 29 U.S.C. § 1056(d)(3)(G)(i)(II).[11] A QDRO must meet the following substantive requirements:
(i) does not require a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan,
*771 (ii) does not require the plan to provide increased benefits (determined on the basis of actuarial value), and
(in) does not require the payment of benefits to an alternate payee which are required to be paid to another alternate payee under another order previously determined to be a qualified domestic relations order.
29 U.S.C. § 1056(d)(3)(D)(i)-(iii). Moreover, a QDRO must clearly specify:
(i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,
(ii) the amount or percentage of the participant’s benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined.
(iii) the number of payments or period to which such order applies, and
(iv) each plan to which such order applies.
29 U.S.C. § 1056(d)(3)(C)(i)-(iv).
In addition to allowing assignments of benefits pursuant to a QDRO, the REA further “enlarged ERISA’s protection of surviving spouses” under § 1055, Boggs, 520 U.S. at 843, 117 S.Ct. at 1761, by requiring that before a plan participant could designate a beneficiary other than his or her spouse, the spouse had to provide written consent, 29 U.S.C. § 1055(c) (2) (A) (i)-(iii) .[12] Section 1055 applies to all individual account plans unless the plan can meet certain requirements for exemption. Boggs, 520 U.S. at 841, 117 S.Ct. at 1760-61 (“Congress’ concern for surviving spouses is also evident from the expansive coverage of § 1055, as amended by REA ... [which] applies] to all ‘individual account plans’ and ‘defined *772 benefit plans.’ The terms are defined, for § 1055 purposes, so that all pensions plans fall within those two categories.”). Individual account plans are exempt from § 1055 if “such plants] provide[ ] that participant’s nonforfeitable accrued benefit ... is payable in full, on the death of the participant, to the participant’s surviving spouse (or, if there is no surviving spouse or the surviving spouse consents in the manner required under subsection (c)(2) of this section, to a designated beneficiary).” 29 U.S.C. § 1055(b)(1)(C)® (emphasis added).[13] In other words, if spousal consent is not properly obtained, the individual account plan fails to meet the exemption’s requirements, and accordingly, falls within § 1055’s expansive coverage over individual account plans. In accordance with these guidelines, the plan documents in this case require that the surviving spouse receives the distribution unless spousal consent to a change in the beneficiary designation is obtained prior to death.[14]
The central inquiry in this case is whether the beneficiary rights to the Plan vested at the trial court’s entry of the Griffin DRO or when the benefits became payable upon Griffin’s death. Indeed, vesting is the threshold question to whether a posthumous QDRO would be appropriate in this *773 case because if in fact Cowser-Griffin’s rights vested at Griffin’s death, then a posthumous QDRO would divest her of the benefits to which she was entitled. Although the vesting point of surviving spouse’s benefits under ERISA is a case of first impression for this Court, this Court should follow the long line of precedent, including the Fourth Circuit and ERISA’s own provisions, which provide that a surviving spouse’s benefits are vested at the time of the participant’s death. 29 U.S.C. § 1055(c)(l)(A)(i), (7)(B); Hopkins v. AT&T Global Info. Solutions Co., 105 F.3d 153, 156-57 (4th Cir.1997).[15]
This issue pits Virginia law against ERISA’s guidelines. Under Virginia law, rights vest at the entry of the final divorce decree; while under ERISA, rights vest at the plan participant’s retirement or death. Compare Himes v. Himes, 12 Va.App. 966, 970, 407 S.E.2d 694, 697 (1991) (holding that it is well established that “property rights and interests [become] vested in the parties when they [agree] upon them, set them forth in a valid separation agreement, and [have] them incorporated into their final divorce decree”), with 29 U.S.C. § 1055(c)(l)(A)(i), (7)(B) (requiring that a plan participant can only change beneficiary designations via spousal consent during the period between when the participant attains age 35 and when the participant dies); Hopkins, 105 F.3d at 156-57 (interpreting § 1055 and concluding that the limited time period to change beneficiaries under ERISA permanently set the vesting date at either the retirement or death of the plan participant), and 29 U.S.C. § 1056(d)(1) and (d)(3) (prohibiting alienation of benefits except through a QDRO). Notably, appellant recognizes this fundamental dichotomy between Virginia law and ERISA by stating that “the facts in the present case and the plan’s requirement to pay benefits upon the participant’s death to the surviving spouse create a clear contest between the rights created in the state court versus *774 the rights granted under the [P]lan.” Indeed, appellant’s argument hinges on the conclusion that “[b]ecause the children’s rights in the retirement plan vested well before Mrs. CowserGriffin had any arguable claim to the plan, this case should be decided in favor of the children.” In my view, no convincing argument has been provided as to why this Court should apply Virginia’s vesting rule when faced with ERISA’s contrary vesting rule and its preemption mandate requiring invalidation of any conflicting state law. 29 U.S.C. § 1144(a). Importantly, the Supreme Court of Virginia has recognized that “ERISA preempts enforcement of any state law or contractual provision that ‘relates to’ an ERISA employee benefit plan and conflicts with an ERISA provision.” Brown v. Brown by Beacham, 244 Va. 319, 325, 422 S.E.2d 375, 379 (1992) (finding that ERISA allowed a notarized signature to constitute spousal consent).
In Boggs, the United States Supreme Court recognized that ERISA may at times conflict with jurisprudence typically reserved to the states, but nevertheless, insofar as such state law conflicts with ERISA, the federal law prevails. Boggs, 520 U.S. at 841, 117 S.Ct. at 1760-61 (“We can begin, and in this case end, the analysis by simply asking if state law conflicts with the provisions of ERISA or operates to frustrate its objects. We hold that there is a conflict, which suffices to resolve the case.”). Although the United States Supreme Court recognized the historic “central” role of state courts in regulating domestic relations matters, id. at 840, 117 S.Ct. at 1760, the Court by no means granted state courts exclusivity, but rather, invalidated the state court’s law simply on the basis of its conflict with ERISA, id. at 841, 117 S.Ct. at 1760-61. ERISA attempts to promote the efficient distribution of benefits and protect the interests and rights of participants and beneficiaries. Cf. Boggs, 520 U.S. at 844-46, 117 S.Ct. at 1762-63. If ERISA could not preempt state law, then “states [would be] free to change ERISA’s structure and balance,” and the goals of ERISA would be thwarted. Id.
Neither federal nor state law supports the entry of a posthumous QDRO to divest a surviving spouse’s vested rights *775 to benefits.[16] Rather, the direct opposite assertion—that a surviving spouse’s vested rights may not be divested by a posthumous QDRO—finds support in both federal and state law.
The Fourth Circuit considered the question of vesting in Hopkins, holding that a surviving spouse’s rights vested at the plan participant’s retirement and could not be divested by a post-retirement QDRO. 105 F.3d at 157. In the only reported Virginia case to deal with this issue, a Virginia circuit court applied Hopkins ’ rationale, held that a surviving spouse’s rights vested at the plan participant’s death, and refused to divest the surviving spouse’s vested rights in favor of an ex-wife’s alleged rights under a DRO. Riley v. Riley, No. 132690, 1998 WL 972328, at *3-5 (Va.Cir.Ct Aug. 14, 1998). Other federal circuits and state courts have followed this same line of analysis, refusing to divest the vested rights of a surviving spouse when faced with a post-retirement or posthumous QDRO and the plan had no notice of the proposed QDRO before the participant’s death or retirement. E.g., Carmona v. Carmona, 544 F.3d 988, 993 (9th Cir.2008) (“[A] state DRO may not create an enforceable interest in surviving spouse benefits to an alternate payee after a participant’s retirement, because ordinarily at retirement the surviving spouse’s interest irrevocably vests.”); Rivers v. Cent. & S.W. Corp., 186 F.3d 681, 683-84 (5th Cir.1999) (“[T]he benefits irrevocably vested in the second wife on the date of her husband’s retirement, and plaintiffs failure to obtain a qualified domestic relations order ... prior to her ex-husband’s retirement forever barred her from acquiring any interest in the plan.”); Langston v. Wilson McShane Corp., 828 N.W.2d 109, 116 (Minn.2013) (“We find the reasoning of the Carmona and Hopkins courts to be persuasive and adopt the rule that *776 surviving spouse benefits generally vest under ERISA at the time of the plan participant’s retirement.”).[17]
Here, appellant waited fourteen years to seek a QDRO and at no point did she provide the Plan Administrator with any notice of a competing claim to the benefits.[18] Under ERISA, Cowser-Griffin’s rights to the Plan benefits vested at Griffin’s death. Accordingly, the vested rights of Cowser-Griffin cannot be divested through a posthumous QDRO.
Similarly, the vesting issue cannot be dodged by finding that the Griffin DRO was a QDRO and entering it nunc pro tunc to an earlier date before Griffin’s death.[19] The majority has correctly observed that the DRO lacked the requisite specificity to be deemed a QDRO. This Court cannot consider the *777 Griffin DRO to be a QDRO because the Griffin DRO fails the specificity requirements of a QDRO because it does not list the percentage distribution of benefits between the children, the number of payments, or each plan to which it applies. 29 U.S.C. § 1056(d)(3)(C). Strict compliance with the substantive and specificity requirements is required in order for a DRO to qualify as a QDRO, regardless of whether these deviations may result in inequitable results. Hawkins v. C.I.R., 86 F.3d 982, 992 (10th Cir.1996) (holding that “to accept anything less than what [the specificity requirements mandate] would contravene the Supreme Court’s frequent admonition that courts must not read language out of a statute”).
A DRO may be qualified only when it clearly specifies the plans to which it applies and the amounts and timing of the payments to be received by each beneficiary. See Metro. Life Ins. Co. v. Bigelow, 283 F.3d 436 (2d Cir.2002) (finding that a DRO could be qualified when it clearly specified each plan to which it applied by identifying the plan as the “General Electric insurance plan which consists of group life insurance, disability death and insurance”); Stewart v. Thorpe Holding Co. Profit Sharing Plan, 207 F.3d 1143, 1152 (9th Cir.2000) (finding that a DRO could be qualified when it specified that the beneficiary was “to receive ‘one-half of the community interest’ ” in the plan); Metro. Life Ins. Co. v. Marsh, 119 F.3d 415, 422 (6th Cir.1997) (finding that DRO could be qualified because it stipulated the percentage distribution to the beneficiaries as two-thirds of the plan). Courts require that the specificity requirements be met with particularity. See Hamilton v. Wash. State Plumbing & Pipefitting Indus. Pension Plan, 433 F.3d 1091, 1096-97 (9th Cir.2006) (finding that a DRO failed the specificity requirements for a QDRO because it “does not require any action by the Plans, does not assign death benefits to the Children, and does not specify when the payments begin or the amount, calculation, or form of the payments”);[20] Bd. of Trs. of Plumbers & Pipefitters *778 Nat’l Pension Fund v. Saxon, 470 F.Supp.2d 605, 609 n. 5 (E.D.Va.) (finding that a DRO requiring a husband to “keep the Wife listed as a beneficiary on the plan” was “extremely vague” and could not be considered a QDRO), ajfd in part, vacated in part, 251 Fed.Appx. 155 (4th Cir.2007).
The Griffin DRO fails the specificity requirements because it does not list the amount to be paid to the beneficiaries, the number of payments or durational period, nor the specific plans to which it applies. Rather, the Griffin DRO is an amorphous requirement that the parties agree to “name the children of the marriage as co-beneficiaries under all 401K plans and other such plans which would be distributed upon the death of either party.” The lack of specificity is fatal to the Griffin DRO. This Court cannot relax the specificity requirements because to do so would defy Congress’s clear requirement that a DRO becomes qualified “only if such order clearly specifies” certain requirements. 29 U.S.C. § 1056(d)(3)(C). Indeed, the specificity requirements were enacted to protect the Plan Administrator’s ability to efficiently distribute plan benefits. Hawkins, 86 F.3d at 992-93. The Griffin DRO provides no such ease of distribution because it fails to include the amount payable to each child, when the money is to be paid, nor even the specific plans it applies to.
In this ease state law conflicts with the provisions of ERISA. The federal protection afforded to the surviving spouse should prevail because neither a QDRO nor spousal consent have been established.
For the foregoing reasons, I respectfully dissent.

. The majority maintains that the Boggs decision dealt only with an annuity benefit, but the issues in that case, like the one before us, also covered a "lump-sum distribution from the [Employer] Savings Plan for Salaried Employees----" Id. at 836, 117 S.Ct. at 1758. Specifically, in analyzing the employee savings plan sums at issue, the Boggs Court noted, "While some individual account plans escape § 1055’s surviving spouse annuity requirements under certain conditions, Congress still protects the interests of the surviving spouse by requiring those plans to pay the spouse the nonforfeitable accrued benefits....” Id. at 843, 117 S.Ct. at 1761-62.

. Specifically, Mr. Griffin asserts:
[E]ven excepted pension plans must specifically require the participant's benefits to be paid to the surviving spouse, absent written consent to an alternate payee____[W]hefher classified as a Joint and Survivor Annuity, a Preretirement Survivor Annuity, or simply paid out as benefits under a 401(k) plan such as the Dominion Salaried Savings Plan, ERISA provides that all pension plan benefits are payable to the surviving spouse upon the death of the plan participant, absent written consent of that spouse to a different election by the participant.... Thus, the Salaried Savings Plan requires distribution to a surviving spouse unless a completed, signed and notarized consent is returned to the plan administrator before the plan participant’s death.

. All parties concede that the Plan is an employment benefit plan or "pension plan” governed by ERISA.

. Additionally, § 1056(d)(3)(H)(i) states that a DRO may be determined a QDRO by "a court of competent jurisdiction."

. A spouse properly waives his or her surviving spouse beneficiary designation only when "the spouse of the participant consents in writing to such election, such election designates a beneficiary (or form of benefits) which may not be changed without spousal consent ..., and the spouse's consent acknowledges the effect of such election and is witnessed by a plan representative or a notary public.” Id.

. The majority suggests that the Plan meets this exception requirement of § 1055 as an individual account plan because the Plan distributes via a lump sum rather than an annuity payment. Subsection 1055(b)(l)(C)(i), however, requires not only a lump sum payout, but also specifically requires spousal consent to designate a non-spouse beneficiary.

. Under the subheading "Death Benefits,” the plan documents stipulate,
Federal law requires that, if you are married when you die, your spouse must receive the distribution unless she or he approved your choice of another (or an additional) beneficiary before your death. Your spouse must agree to your choice of that beneficiary by signing the spousal consent portion of a Beneficiary Authorization form obtained from ACS. The form must have been completed, signed, notarized, and returned to ACS before your death.
(Emphasis in original). Additionally, the plan documents only permit the Plan Administrator to pay distributions deviating from this designation "in response to a Qualified Domestic Relations Order.”

. Hopkins was followed in an unreported Virginia circuit court decision, holding that the surviving spouse's rights vested at the plan participant’s death and that these rights could not be divested by the competing claim of an ex-wife’s through a prior DRO. Riley v. Riley, No. 132690, 1998 WL 972328, at *3-5 (Va.Cir.Ct. Aug. 14, 1998).

. Although 29 C.F.R. 2530.206(c)(2) provides examples for when a posthumous QDRO may be entered after the plan participant’s death, none of the examples involve a competing vested claim to the benefits. Indeed, the examples include no situation in which there is a competing claim to the benefits. Accordingly, these examples do not address the crucial threshold question in this case of vesting and provide no basis for allowing alienation of a benefit vested in the surviving spouse.

. See also Singleton v. Singleton, 290 F.Supp.2d 767, 772 (W.D.Ky. 2003) (refusing to divest a current spouse's rights when the plan participant retired because ”[t]he requirements for disenfranchising a current spouse are strictly applied for good and valid reasons”); Stahl v. Exxon Corp., 212 F.Supp.2d 657, 669-70 (S.D.Tex.2002) (citing the majority of circuits that a surviving spouse's rights vest upon the plan participant’s death and refusing to divest the surviving spouse's rights through a posthumous QDRO).

. The Dominion Plan Administrator has already rejected the proposed Griffin QDRO on the grounds that it would "requir[e] payment of a portion of the surviving spouse's survivor benefits to another person,” thus violating the substantive requirements of a QDRO which provide that the QDRO cannot pay benefits not otherwise available under the Plan. Indeed, if the trial court were to enter the proposed Griffin QDRO, the parties would be faced with the Plan Administrator's standing decision to reject the proposed Griffin QDRO and would need to seek review the Plan Administrator’s decision for error.

. The trial court could not enter the proposed Griffin QDRO nunc pro tunc (as opposed to the Griffin DRO) because this action would implicate the threshold question of vesting discussed supra. As appellee correctly points out, the exclusion of the posthumous QDRO is not simply a matter of timing, but is contingent on the issue of vesting. Accordingly, appellant’s only remaining remedy would be for this Court to determine the Griffin DRO to be a QDRO.
I respectfully disagree with the majority's suggestion that we need to determine whether the proposed QDRO meets the statutory requirements. The issue is whether the existing terms of the DRO satisfied the statutory requirement for a QDRO to defeat the vested surviving spouse's claim to the benefits.

. The Ninth Circuit additionally held that besides specificity, in order for a QDRO to divest a surviving spouse of her rights, the proposed *778 QDRO had to assign rights to a former spouse, rather than to children. Id. at 1104. This specific approach has not been adopted in the Fourth Circuit nor in Virginia courts, and is an unnecessary complication of the specificity requirements and interpretation of § 1056(d)(3)(C)(i)-(iv). This Court need not reach this rationale because the Griffin DRO is not valid as a QDRO because it fails the specificity requirements.