COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, McCullough and O'Brien
Argued at Fredericksburg, Virginia

JEFFERY HARVEY AND
 TERESA HARVEY

v.      Record No. 1694-14-4

DAVID FLOCKHART AND
 RHONALEE FLOCKHART

OPINION BY
JUDGE STEPHEN R. McCULLOUGH
AUGUST 11, 2015

FROM THE CIRCUIT COURT OF FREDERICK COUNTY
Clifford L. Athey, Jr., Judge

Shelly R. James (Law Office of Shelly R. James, PLLC, on briefs),
for appellants.

Kelly C. Ashby (Law Office of Kelly C. Ashby, P.C., on brief), for
appellees.


Jeffery and Teresa Harvey, the biological grandparents of S.H. and J.H., appeal from an

order granting a petition for adoption of these children to David and Rhonalee Flockhart. The

Harveys contend that the circuit court erred in (1) considering a custody and visitation appeal

from juvenile and domestic relations district court when the notice of appeal was not timely

filed; (2) denying the Harveys' motion for a continuance; (3) granting the adoption; (4) finding

that the adoption served the children's best interests; and (5) terminating the Harveys' visitation

rights. We find no error and affirm.

BACKGROUND

On January 6, 2011, the Flockharts received custody of S.H. and J.H. through a

Shenandoah County Department of Social Services foster placement. S.H. was approximately

one and a half years old, and J.H. was approximately six months old. After the natural parents'

rights were terminated, the Flockharts and the Harveys cross-petitioned the Shenandoah County Circuit Court for custody. By order dated October 17, 2012, the court awarded the Flockharts legal and physical custody of S.H. and J.H. It denied the Harveys' petition for custody but awarded them visitation.

On November 14, 2012, the Flockharts filed a petition for adoption in the Frederick County Circuit Court. The court granted that petition by final order dated February 13, 2013. The Harveys moved to vacate that order on the ground that they had not received notice of the adoption proceedings. The court granted their motion. The court scheduled a hearing on the Flockharts' petition and allowed the Harveys to intervene and participate.

On April 7, 2014, the Frederick County Department of Social Services completed the report of its investigation in connection with the Flockharts' petition for adoption. On May 20, 2014, the Department filed an addendum to the report. The addendum noted that an anonymous complaint – the anonymous complainant, it turns out, was Mrs. Harvey – to County building officials had yielded information that the children were sleeping in a basement. This basement lacked a door to the outside and had no window access to the exterior. In response, the Flockharts moved the children to bedrooms on the main floor of the home. Each child began to sleep in his or her own bed and had adequate space for clothing and other belongings. Each room was equipped with a smoke detector. The addendum noted that the Flockharts had filed for a permit to construct a bedroom in the basement, and the application was pending. The addendum also mentioned the building inspector's discovery of "improper grounding of the [swimming-]pool motor and violations with the pool gate." The pool gate was neither self-closing nor self-locking. The building inspector required the Flockharts to place a lock on the gate until this problem was resolved. According to the addendum, the Flockharts had

remedied these issues. The addendum concluded, "As of May 19, 2014, there are no violations noted in the Frederick County Health's Department file for this residence."

On May 23, 2014, the Harveys requested a continuance to allow them more time to investigate the addendum and its implications. The court denied the motion.

At a hearing on May 27, 2014, the court heard evidence on S.H.'s and J.H.'s relationships with the Flockharts and the Harveys, respectively, and on interaction between the Harveys and the Flockharts. The Flockharts described their love for S.H. and J.H. Likewise, the Harveys and their witnesses testified to the Harveys' loving relationship with the children and to the fact that the children enjoy spending time with their grandparents. The Flockharts, the Harveys, and other witnesses testified to the tension, lack of trust, and even hostility between the Flockharts and the Harveys. It became clear from the testimony presented that the Harveys do not view the Flockharts as the children's parents and this mindset taints the interaction between them and the Harveys. The Flockharts explained that the visitation was having an adverse effect on the children and on the family unit.

The court also heard testimony concerning the Flockharts' living arrangements. The Flockharts reside in a 2000-square-foot ranch home with a basement. The home belongs to Mrs. Flockhart's parents, the Russells. Eleven people reside there: the Flockharts, Mrs. Flockhart's parents, her grandparents (also Russells), and five children. S.H., J.H., and the three other children were born to the same mother. The home has three upstairs bedrooms and a basement. The basement is not completely finished. The basement has some windows, but they are not suitable for escape in the event of fire, and there is no door to the outside. The Flockharts applied for a building permit to allow for basement ingress and egress. Mrs. Harvey acknowledged that she was the one who contacted building officials about the Flockharts' home and building permit.

The Flockharts moved into the Russells' home after selling their first home, which they had outgrown. They planned to save their money to build or buy a larger home within two years. Mrs. Flockhart's grandparents sleep in one bedroom, the boys in a second bedroom, and the girls in a third bedroom. The Flockharts sleep in a downstairs living area, and Mrs. Flockhart's parents sleep in a separate living area, also downstairs.

Mrs. Flockhart explained that, when the pool is not operational, the ground wire is not attached to the pump, and the electricity is turned off. When the pool is operational, the ground wire is reattached to the pump.

Dawn Welch, a licensed clinical social worker, testified at the hearing. The Flockharts brought S.H. and J.H. to her based on "some behaviors that were occurring within their home." Welch observed the two children about seventeen times. She testified that the two are "very bonded" and love the Flockharts "very much." According to Welch, S.H. and J.H. do not want to go to visitation with the Harveys, and they experience confusion "about what they're told [at the Harveys'] versus when they're home." Welch said that S.H., J.H., and their siblings "are very confused. They don't understand why [S.H. and J.H.] go. And it has a direct impact on them with their relationship with their parents and their siblings." She expressed concern that the visitation triggered "[l]ots of anxiety" in S.H. and J.H. and, for one of them, some "regressive behaviors." She did not have any contact with the Harveys and, therefore, did not observe the Harveys interact with S.H. and J.H.

Following the hearing, the court prepared a memorandum containing thorough findings of fact and conclusions of law. Among other things, the circuit court found that "[t]he parties are unable to cooperate in and resolve disputes regarding the children, in part, because the Harveys refuse to recognize the Flockharts as the parents of the children . . . ." The court granted the Flockharts' petition for adoption by order entered August 13, 2014.

ANALYSIS

I. THE CIRCUIT COURT HAD JURISDICTION OVER THE ADOPTION PETITION;
GRANTING THAT PETITION DIVESTED THE GRANDPARENTS OF ANY RIGHT TO
VISITATION.

The Harveys' first assignment of error is that the circuit court lacked jurisdiction to address the Harveys' visitation. They contend that the Flockharts did not timely appeal the juvenile court's order awarding the Harveys visitation. The Frederick County Juvenile and Domestic Relations District Court entered an order on March 18, 2014, affirming the 2012 custody and visitation order. The March 18, 2014 order was not appealed until April 29, 2014.

This jurisdictional issue is one of law and, therefore, we review the circuit court's conclusion *de novo*. See Rollins v. Commonwealth, 37 Va. App. 73, 79, 554 S.E.2d 99, 102 (2001). Under Code § 16.1-296(A), "an appeal may be taken to the circuit court within 10 days from the entry of a final judgment, order or conviction . . . ." It is well established that an untimely appeal from juvenile court to circuit court results in dismissal of the appeal. See Congdon v. Commonwealth, 57 Va. App. 692, 695-96, 705 S.E.2d 526, 528 (2011).

That principle does not apply here. By statute, a "final order of adoption" divests

> any person whose interest in the child derives from or though the
> birth parent . . . , including but not limited to grandparents, . . . of
> all legal rights and obligations in respect to the child including the
> right to petition any court for visitation with the child.

Code § 63.2-1215. This language is plain and unambiguous.

The Harveys are the biological grandparents of S.H. and J.H. The Flockharts adopted S.H. and J.H. Entry of the final order of adoption divested the Harveys of "all legal rights and obligations in respect to the child[ren]," which includes visitation. Id. The final order of adoption superseded any preexisting visitation order entered by the juvenile court. The Flockharts' petition for adoption necessarily implied a question of the Harveys' ongoing visitation respecting S.H. and J.H., and there is no question of the court's jurisdiction to entertain

the petition.  See Code §§ 16.1-244, 63.2-1201.  Therefore, the untimely appeal of the juvenile

court's order is immaterial here.

We acknowledge the holding in Thrift v. Baldwin, 23 Va. App. 18, 20, 473 S.E.2d 715,

716 (1996), where we held that biological grandparents constituted "persons of interest" who

could petition the court for visitation.  Even though an adoption order "extinguished [their] legal

grandparental . . . relationship," their legitimate interest owed to the continuing "blood

relationship."  Id.  We decided Thrift in 1996.  In 1997, the General Assembly amended Code

§ 16.1-241(A), which specifies the jurisdiction of the juvenile and domestic relations district

courts, as follows:

> The authority of the juvenile court to adjudicate matters
> involving the custody, visitation, support, control or disposition of
> a child shall not be limited to the consideration of petitions filed by
> a mother, father or legal guardian but shall include petitions filed at
> any time by any party with a legitimate interest therein.  A party
> with a legitimate interest shall be broadly construed and shall
> include, but not be limited to, grandparents, stepparents, former
> stepparents, blood relatives and family members.  A party with a
> legitimate interest shall not include any person (i) whose parental
> rights have been involuntarily terminated by court order, *either
> voluntarily or involuntarily, or any other person whose interest in
> the child derives from or through such person whose parental
> rights have been so terminated, including but not limited to
> grandparents, stepparents, former stepparents, blood relatives and
> family members,* if the child subsequently has been legally adopted
> . . . .

1997 Va. Acts ch. 690.  This amendment superseded our holding in Thrift.  See Deanna D. Cook

& Player B. Michelsen, Annual Survey of Virginia Law: Domestic Relations, 31 U. Rich. L.

Rev. 1069, 1078 n.71 (1997) (noting that the 1997 amendment "specifically overrules Thrift v.

Baldwin").

In that same enactment, the General Assembly also made the identical amendment to

Code § 20-124.1, which defines "person with a legitimate interest" in connection with custody

and visitation arrangements for minor children.  1997 Va. Acts ch. 690.  The same enactment

modified the statute captioned "Legal effects of adoption," Code § 63.1-233, currently Code

§ 63.2-1215:

> The birth parents, and the parents by previous adoption, if any, *except where a final order of adoption is entered pursuant to § 63.1-231, and any other person whose interest in the child derives from or through such parent or previous adoptive parent, including but not limited to grandparents, stepparents, former stepparents, blood relatives and family members,* other than any such parent who is the husband or wife of one of the petitioners, shall, by such final order of adoption, be divested of all legal rights and obligations in respect to the child *including the right to petition any court for visitation with the child*, ~~and~~ *but in all cases* the child shall be free from all legal obligations of obedience and maintenance in respect to ~~them~~ *such persons*. Any child adopted under the provisions of this chapter shall, from and after the entry of the interlocutory order or from and after the entry of the final order where no such interlocutory order is entered, be, to all intents and purposes, the child of the person or persons so adopting him, and, unless and until such interlocutory order or final order is subsequently revoked, shall be entitled to all the rights and privileges, and subject to all the obligations, of a child of such person or persons born in lawful wedlock.

1997 Va. Acts ch. 690.

These amendments reflect the General Assembly's intention that an adoption order fully sever the adopted child's legal ties to the previous family. In providing for this clean break, the General Assembly eliminated a potential source of disruption in the growing bond between the adopted child and the adopting family.

In their fifth assignment of error, the Harveys make an analogous argument to the one before us in Thrift. They contend that their claim for visitation was rooted not only in their status as biological grandparents but also derived from their status as persons of interest, particularly as persons who previously had received court-ordered visitation. Ruling as the Harveys request, however, would require us to circumvent the plain language of Code § 63.2-1215. The Harveys' interest in S.H. and J.H. plainly derives from their status as

biological grandparents. More significantly, the Harveys' agument cannot be reconciled with the plain language of the applicable statutes.

The circuit court had jurisdiction over the Flockharts' adoption petition. Entry of the order of adoption divested the Harveys of any right to visitation by operation of law. Consequently, there was no need for the Flockharts to file a separate pleading to seek the termination of the grandparents' visitation. Therefore, the Flockharts' failure to timely appeal the juvenile court's visitation order is of no legal consequence in this case.

II. THE CIRCUIT COURT DID NOT ABUSE ITS DISCRETION IN DENYING THE HARVEYS' MOTION FOR A CONTINUANCE.

The Harveys contend that the addendum to the Frederick County Department of Social Services' investigative report – filed on May 20, 2014, with a trial date of May 27, 2014 – necessitated a continuance to allow further investigation of the facts described in the addendum and the initial report. The failure to grant the continuance, the Harveys argue, "seriously imperiled" the circuit court's "just determination of the facts."

> The decision to grant a motion for a continuance is within the sound discretion of the circuit court and must be considered in view of the circumstances unique to each case. The circuit court's ruling on a motion for a continuance will be rejected on appeal only upon a showing of abuse of discretion *and* resulting prejudice to the movant. Additionally, in the application of these principles, . . . when a circuit court's refusal to grant a continuance "seriously imperil[s] the just determination of the cause," the judgment must be reversed.

Haugen v. Shenandoah Valley Dep't of Soc. Servs., 274 Va. 27, 34, 645 S.E.2d 261, 265 (2007) (second alteration in original) (quoting Myers v. Trice, 86 Va. 835, 842, 11 S.E. 428, 430 (1890)). "'[T]he abuse of discretion standard requires a reviewing court to show enough deference to [the trial court's] judgment that [it] does not reverse merely because it would have come to a different result in the first instance.'" Lawlor v. Commonwealth, 285 Va. 187, 212, 738 S.E.2d 847, 861 (2013) (quoting Evans v. Eaton Corp. Long Term Disability Plan, 514 F.3d

315, 322 (4th Cir. 2008)). "Accordingly, 'when a decision is discretionary . . . . the court has a range of choice, and . . . its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'" Id. at 212-13, 738 S.E.2d at 861 (alterations in original) (quoting Landrum v. Chippenham & Johnston-Willis Hosps., Inc., 282 Va. 346, 352, 717 S.E.2d 134, 137 (2011)).

We find no abuse of discretion here. First, as of May 23, 2014, when the Harveys moved for a continuance, the adoption petition had been pending for close to one and a half years. Although not dispositive, a trial court certainly may consider the fact that a case has been pending for a lengthy period of time in weighing the appropriateness of a continuance. Second, the motion for a continuance did not mention any attempt to contact the authors of either the initial report or the addendum. In this connection, the initial report was filed on April 7, 2014, giving the Harveys sufficient time to investigate its contents and, if necessary, subpoena witnesses. Third, counsel for the Harveys received the addendum on May 20, 2014, one week before the hearing. The addendum is brief, and its substance is not complex. The Harveys' able and experienced counsel could, and did, cross-examine the Flockharts concerning the addendum's contents. On this record, we find neither an abuse of discretion, nor any prejudice in the circuit court's decision to deny the requested continuance.

III. THE ADOPTION COMPLIED WITH STATUTORY PROCEDURES.

The Harveys also assert that this adoption did not comport with the adoption statutes. They take the view that S.H.'s and J.H.'s adoption "did not fall into any of the[] categories" authorized by Virginia law. The Harveys acknowledge that Virginia law authorizes adoptions by foster parents, see Code § 63.2-1229, but they make the technical argument that the Flockharts were no longer foster parents when they filed their petition for adoption. They maintain that the

Flockharts' relationship owed, instead, to the Shenandoah County Circuit Court's October 17, 2012, order granting their petition for custody.

As this issue is one of law, we review the circuit court's determination *de novo*. Rollins, 37 Va. App. at 79, 554 S.E.2d at 102. "[T]he adoption statutes should be liberally construed to carry out the beneficent purposes of . . . adoption, [and at the same time,] the principle is well established that courts must construe statutes according to the language used by the legislature." Sozio v. Thorpe, 22 Va. App. 271, 274, 469 S.E.2d 68, 69 (1996) (second alteration in original) (citations and internal quotation marks omitted).

The circuit court correctly determined that the Flockharts' adoption could proceed under Code § 63.2-1229. That statute provides, in relevant part,

> When a foster parent who has a child placed in the foster parents' home by a licensed or duly authorized child-placing agency desires to adopt the child and (i) the child has resided in the home of such foster parent continuously for at least eighteen months and (ii) the birth parents' rights to the child have been terminated, the circuit court shall accept the petition . . . .

Under further conditions, the court "may enter a final order of adoption." Id. There is no factual question here that the Flockharts originally received custody of S.H. and J.H. as foster parents or that Code § 63.2-1229's other conditions are satisfied. The Harveys do not point us to any statute that would have terminated the Flockharts' status as foster parents, for Code § 63.2-1229 purposes, once they were awarded custody following a petition. To the contrary, we observe that the plain meaning of "foster parent" includes one in the Flockharts' position, either before or after their custody petition's award. See Black's Law Dictionary 1287 (10th ed. 2014) (defining "foster parent" as "[a]n adult who, though without blood ties or legal ties, cares for and rears a child"); see also id. at 290 (defining "foster child" as "[a] child whose care and upbringing are entrusted to an adult other than the child's natural or adoptive parents"). The Flockharts were

S.H.'s and J.H.'s foster parents no less upon the custody petition's award. Code § 63.2-1229 applies.

Code § 16.1-281(A), cited by the Harveys, does not support their argument. That provision addresses foster care plans, specifying,

> In any case in which (i) a local board of social services places a child through an agreement with the parents or guardians where legal custody remains with the parents or guardian, or (ii) legal custody of a child is given to a local board of social services or a child welfare agency, the local department of social services or child welfare agency *shall prepare a foster care plan for such child*, as described hereinafter.

Id. (emphasis added). Nothing in this statute provides that foster parents cease to be foster parents when they petition for, and are awarded, child custody.

The Harveys' argument runs contrary to the manifest legislative intent that foster parents be given the opportunity to adopt the children who have been placed in their care. We find no merit to the Harveys' argument that the court did not comply with the adoption statutes.

#### IV. THE EVIDENCE AMPLY SUPPORTS THE CIRCUIT COURT'S FINDING THAT ADOPTION SERVED THE CHILDREN'S BEST INTERESTS.

The Harveys next argue that the circuit court erred in finding that the adoption served S.H.'s and J.H.'s best interests. We presume that the circuit court thoroughly weighed all of the evidence, considered the statutory requirements, and made its determination based on the children's best interests. See Brown v. Brown, 218 Va. 196, 200, 237 S.E.2d 89, 92 (1977) (per curiam). "[W]e view the evidence in the light most favorable to the party prevailing below, giving it all reasonable inferences fairly deducible therefrom." Winfield v. Urquhart, 25 Va. App. 688, 690, 492 S.E.2d 464, 464 (1997).

There is no question that the Flockharts love S.H. and J.H. The Flockharts both have good jobs and are eager and able to care for the children. They have cared for S.H. and J.H. from a tender age, and the children are doing well in their care. Moreover, the circuit court made

a finding of fact – which now binds us on appeal since it is not plainly wrong or without evidence to support it – that "[t]he parties are unable to cooperate in and resolve disputes regarding the children, in part, because the Harveys refuse to recognize the Flockharts as the parents of the children." The consistent presence of this considerable tension between the Harveys and the Flockharts in the lives of the children could certainly be found by the circuit court not to be in the best interests of the children. In addition, allowing the Flockharts to adopt S.H. and J.H. allows the children to remain united with their siblings. Finally, the Frederick County Department of Social Services recommended that the court grant the Flockharts' petition for adoption.

The Harveys argue that the Department of Social Services' report is flawed. They contend that the addendum "proved that the initial report was untrustworthy." Regarding the addendum, the record reveals that the problems with the pool were minor and that the children were no longer sleeping in the basement. The addendum in no way altered the initial report's most salient findings – that the Flockharts and the children have bonded over a period of years and that the Flockharts can provide the children with a stable, nurturing, and loving upbringing.

The Harveys also criticize the circuit court's reliance on Welch's testimony. They note that Welch did not observe the Harveys with the children, did not watch the children at the Flockharts' home, and did not cross-check the representations made by the Flockharts. "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). Consequently, on appeal, we "defer to the trial court's evaluation of the credibility of the witnesses who testify" before it. Shackelford v. Shackelford, 39 Va. App. 201, 208, 571 S.E.2d 917, 920 (2002). Although the circuit court addressed the Department's report and Welch's testimony, ample additional

evidence, noted above, supports the circuit court's conclusion that granting the Flockharts' petition serves the children's best interests. This is not a close case under the standard of review, which requires us to review the facts in the light most favorable to the prevailing party.

Finally, regarding the circuit court's determination that the Harveys' visitation should cease, as noted above, the Harveys' right to visitation, as S.H.'s and J.H.'s biological grandparents, terminated upon the entry of the adoption order.

## CONCLUSION

We affirm the judgment of the circuit court.

<u>Affirmed.</u>