COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges O'Brien and Lorish

KANESHA PITTMAN

v.      Record No. 0989-22-3

ROANOKE CITY DEPARTMENT
 OF SOCIAL SERVICES

MEMORANDUM OPINION*
PER CURIAM
JUNE 27, 2023

FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
David B. Carson, Judge

(Ruth Blaskis; John S. Koehler; The Law Office of Ruth Blaskis;
The Law Office of James Steele, PLLC, on brief), for appellant.
Appellant submitting on brief.

(Timothy R. Spencer, City Attorney; Jennifer L. Crook, Assistant
City Attorney; Joseph F. Vannoy, Guardian ad litem for the minor
children, on brief), for appellee.


Kanesha Pittman (mother) appeals the circuit court's order approving the removal of her

children from the home and challenges its finding that the children were abused or neglected.

Mother argues that the circuit court erred in finding that the children were subject to removal under

Code § 16.1-252 because the children "were not subject to an imminent threat to life or health to the

extent that severe or irremediable injury would be likely to result if the children were returned to or

left" in her custody. After examining the briefs and record, the panel unanimously holds that oral

argument is unnecessary because "the appeal is wholly without merit." Code § 17.1-403(ii)(a);

Rule 5A:27(a). Accordingly, we affirm.

---

* This opinion is not designated for publication. *See* Code § 17.1-413.

BACKGROUND[1]

On appeal, "we view the evidence in the light most favorable to the prevailing party, in this case, the Department, and grant to it all reasonable inferences fairly deducible from the evidence." *King v. King George Dep't of Soc. Servs.*, 69 Va. App. 206, 210 (2018) (quoting *C. Farrell v. Warren Cnty. Dep't of Soc. Servs.*, 59 Va. App. 375, 420-21 (2012)). "That principle requires us to 'discard the evidence' of [mother] which conflicts, either directly or inferentially, with the evidence presented by the [Department] at trial." *Boatright v. Wise Cnty. Dep't of Soc. Servs.*, 64 Va. App. 71, 76 (2014) (second alteration in original) (quoting *Congdon v. Congdon*, 40 Va. App. 255, 258 (2003)).

Mother is the biological parent to five children. Beginning in 2004 and continuing through 2020, the family had been involved with child protective services several times because of allegations of neglect and lack of supervision. In October 2021, mother lived with her four younger children, who ranged in age from 12 to 17. Mother's oldest child was an adult and did not live with them. The then-17-year-old child ("older daughter") reached the age of majority before the circuit court hearing and was not subject to its rulings.

Around 2:00 a.m. on October 31, 2021, the City of Roanoke Department of Social Services (the Department) received a referral from the police who were at the family's home because the older daughter had reported her brother was missing. The previous afternoon, mother had become angry with her then-15-year-old son ("older son") because he had not cleaned the house as she had asked. During the altercation, mother "wrestled" the child to the

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issue mother has raised. Evidence and factual findings below that are necessary to address the assignment of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

ground, "choked" him, and threatened to call the police to "have him removed if he wasn't going to leave himself." Mother called the police anyway, but when an officer arrived, the older son had already left the house. Later that evening, mother went out to celebrate her birthday, even though her older son had not returned home. Once mother left, the older daughter tried to locate her sibling by calling him and friends. After she could not reach him, she called the police.

When the police arrived between 10:00 and 11:00 p.m., neither mother nor the older son was present; mother's three other minor children were home alone. No one could reach mother by telephone. The older daughter showed the police and the Department a video of the earlier incident when mother pinned her older son on a bedroom floor in "a choke hold." The older daughter reported that mother was leaving for California "either that day or the next for work" and would be gone for "a few months."[2] One of mother's friends was expected to "stop in and take them to get food" while mother was away, or mother planned to send the children money through Venmo (a digital wallet) so they could walk to the store and purchase food. Mother had reportedly traveled for "months at a time" several times previously, leaving the older daughter to care for her three younger siblings.[3] On prior occasions, mother had hired a babysitter, who "wasn't there often" according to the older daughter, to watch the children and give them rides to school or the store.

Under the circumstances, the Department was concerned because although all the children had cell phones, none of them had cellular data. Mother had turned off their cellular data because they were "being disrespectful." The cell phones thus only operated with WiFi,

---

[2] Mother was a "travel nurse."

[3] Occasionally, mother took the children, or some of them, with her when she traveled for work.

which was unavailable in their home; they had to use a neighbor's WiFi. On top of a lack of reliable cell phone coverage, the children had no access to a vehicle while mother was away.

The older daughter provided the Department with the name and number of a paternal aunt, but she could not be reached.[4] With no other options, the Department placed the three children in foster care and filed a missing person report for the older son. Between 8:00 and 9:00 a.m., the police found the missing child walking down a road. He appeared "disheveled" and dirty with grass in his hair; he also had holes in his shoes. After a forensic nurse confirmed that he did not have any injuries, the Department reunited him with his siblings.

The older son spoke with the police and the Department about the incident that caused him to leave home. Mother had wanted him to clean the house, and while he was cleaning his bedroom, mother "became upset" because he was not cleaning the kitchen. The older son reported that mother started "smacking him so he attempted to restrain her." When he "let her go," mother "wrestled him to the ground" and choked him "with her arm around his neck." The older son told the police that this was not the first time that mother had reacted this way and that she had physically assaulted him "multiple times" previously.

On November 1, 2021, after reviewing the Department's affidavit regarding the removal of the children, the City of Roanoke Juvenile and Domestic Relations District Court (the JDR court) entered emergency removal orders. Three days later, it entered preliminary removal orders. Less than one month later, the JDR court adjudicated that the children were abused or neglected. Subsequently, the JDR court entered dispositional orders, transferring custody of the children to the Department and approving the foster care plan with a goal of return home and concurrent goal of relative placement. Mother appealed the JDR court's rulings.

---

[4] The paternal aunt later advised the Department that she was unable to care for the children at that time.

- 4 -

On May 3, 2022, the parties appeared before the circuit court.[5]  Roanoke City Police Officer Jeremy Marsh testified about the incident precipitating the removal.  He explained that "normally" the police receive "runaway calls" from an adult, but this time, the older daughter, who was 17 then, reported that her sibling was missing.  Officer Marsh tried to call mother, to no avail.  The older daughter expressed fear that mother would "beat her" because she had called the police.

The Department introduced the video of the choking incident between mother and her older son.  Although the video captured only this specific incident, mother had a history of physically disciplining the older children and being "aggressive" with the younger children.  The older daughter could not quantify how many times mother had physically assaulted them previously but knew that it had happened more than ten times.  At no time, however, did a child require medical attention.

When the children were removed, mother was not home, and the older daughter only provided contact information for a paternal aunt.  The Department tried to call the paternal aunt, but it was 2:00 a.m. and she did not answer her phone.  The Department had asked for contact information for other family members, but the older daughter did not have any information for other relatives who might have been "able and willing" to care for the children.

After the Department presented its evidence, mother testified about the day of the choking incident.  She explained that she had asked all the children to clean the house and assigned them chores.  When her older son did not clean the kitchen as she had asked, they began to argue.  She "smacked his arm twice," and he grabbed her arm and twisted it.  She tried to push him out of the room, but they "started wrestling."  Mother denied choking or strangling him.

---

[5] The children's fathers were not present at the circuit court hearing and did not appeal its judgment.

Admittedly, the situation "started escalating." She claimed that her son "got a hold of [her] neck and squeezed," but she managed to escape and call the police. Mother testified that after he left the house, she tracked his location with her cell phone and thought that he was at a friend's house. She then left the other three children at home while she went out to celebrate her birthday.

Mother admitted that she had limited the children's usage of cellular data because "they are kids." It was her understanding, however, that they could use their cell phones to make emergency calls. Mother also believed that the children had the names and phone numbers of several relatives stored in their phones in case of emergency. Mother's friend testified that the children also had her telephone number saved in their cell phones.

When asked about her employment, mother explained that she was a nurse who traveled to different states depending on the assignment. Typically, an assignment lasted four to eight weeks. In the summer, she took the children with her to her assignments. During the school year, mother offered to take the children with her, but they wanted to stay home. Mother tried to fly home "every week or every other week" when she was away. She had arranged for a friend to live in the home, but admittedly, her friend was not there 24 hours every day. Mother also had hired a "nanny" to help with transportation and check on the children.

Along with describing their living situation, mother discussed her relationship with the children. She disciplined her children by talking with them, imposing restrictions, and giving them "whoopings." She defined "whoopings" as "smack[ing]" the children with her hand or "spanking[]" them with a belt. Mother admitted locking the refrigerator once when her son "kept going in and taking snacks and leaving the food wrappers and everything in his room." Despite these admissions, she denied abusing the children. She claimed that the underlying incident was just "a bad day" and not a "frequent occurrence." Mother proffered that other witnesses would

have testified that she was a "good mother." Mother asked the circuit court to place the children with family, instead of in foster care, if they could not return home.[6]

After hearing the evidence and arguments, the circuit court held that the Department had met its burden of proving that the children were abused or neglected and approved the foster care placement. The circuit court found that the underlying incident was "incredibly traumatic," and despite not confirming where her son was, mother left the house to celebrate her birthday. The circuit court further found that the older daughter's testimony was "wholly credible" and mother's testimony was "almost in its entirety unreliable." Mother appeals.

## ANALYSIS

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 558 (2018) (alteration in original) (quoting *Logan v. Fairfax Cnty. Dep't of Hum. Dev.*, 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011) (quoting *Martin v. Pittsylvania Cnty. Dep't of Soc. Servs.*, 3 Va. App. 15, 20 (1986)).

Mother challenges the circuit court's removal order because the children were not in "imminent" danger of abuse or neglect. Mother explains that she is a single mother who had arranged for the children to be supervised while she traveled for work. She also emphasizes that her disciplinary methods were not abusive because none of the children had suffered any "significant" injury.

---

[6] A family friend testified that he had petitioned for custody of one child; however, he planned to amend his petition to include the other minor children.

Courts have the authority to remove a child from a parent's custody when the child is alleged to have been abused or neglected. Code §§ 16.1-251 (emergency removal orders), -252 (preliminary removal orders). The Department must prove that the "child would be subjected to an imminent threat to life or health to the extent that severe or irremediable injury would be likely to result if the child were returned to or left in the custody" of his or her parent. Code §§ 16.1-251(A)(1), -252(E)(1). Furthermore, a Department must prove that it made "[r]easonable efforts" to prevent the removal of the child. Code §§ 16.1-251(A)(2), -252(E)(2).

An abused or neglected child is one

> [w]hose parents or other person responsible for his care creates or inflicts, threatens to create or inflict, or allows to be created or inflicted upon such child a physical or mental injury by other than accidental means, or creates a substantial risk of death, disfigurement or impairment of bodily or mental functions . . . .

Code § 16.1-228(1). "[T]he statutory definitions of an abused or neglected child do not require proof of actual harm or impairment having been experienced by the child." *D. Farrell v. Warren Cnty. Dep't of Soc. Servs.*, 59 Va. App. 342, 364 (2012) (alteration in original) (quoting *Jenkins v. Winchester Dep't of Soc. Servs.*, 12 Va. App. 1178, 1183 (1991)). Proof by a preponderance of the evidence is the appropriate standard for abuse or neglect cases. *See Cumbo v. Dickenson Cnty. Dep't of Soc. Servs.*, 62 Va. App. 124, 130 (2013).

The circuit court did not err in finding that the children were abused or neglected. The Department presented video evidence and testimony about mother's physical altercation with her older son. The circuit court found that the incident was "incredibly traumatic" for the child. After the incident, he left home and was missing for about 15 hours. Notwithstanding the child's absence, mother decided it was "her special day" and went out to celebrate her birthday, leaving the other children home alone. When the police found the missing child, he was "disheveled"

and wearing shoes with holes in them. He told the Department that he had "walked all night." His health and safety clearly had been at risk.

The choking incident was not the first time that mother had physically abused the children or left them unsupervised. Mother admitted disciplining her children by "smack[ing]" them and giving them "whoopings." The older daughter testified that she could recall more than ten situations when mother had physically assaulted the children, and the older son reported that mother had physically assaulted him "multiple times." In addition, the Department presented evidence that the family had a history with child protective services, including allegations of neglect and lack of supervision. Mother traveled for work and was gone for extended periods of time. Mother had arranged for a friend and a nanny to check on the children and help with transportation, but the older daughter testified that she often was responsible for caring for her younger siblings. Leaving the children home alone without adequate supervision or reliable cell phone coverage for weeks at a time placed their health and safety at risk.

Finally, the Department presented evidence of its efforts to prevent the removal. The police and the Department attempted to call mother several times but could not reach her. The Department also tried to call a paternal aunt without success. Being unable to reach mother or any other relatives, the Department had no less restrictive option than placing the children in foster care.

The circuit court considered all the testimony and evidence presented and found that the older daughter's testimony was credible while mother was not "a credible witness." The "credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." *Simms v. Alexandria Dep't of Cmty. & Hum. Servs.*, 74 Va. App. 447, 470 (2022) (quoting *Harvey v.*

*Flockhart*, 65 Va. App. 131, 146 (2015)). "This Court is bound by the credibility findings of the circuit court." *Tackett v. Arlington Cnty. Dep't of Hum. Servs.*, 62 Va. App. 296, 339 (2013).

CONCLUSION

Based on the totality of the record, the circuit court did not err in approving the removal of the children and finding that the Department proved by a preponderance of the evidence that the children were abused or neglected.

*Affirmed.*