COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, Ortiz and Senior Judge Haley

TESHA CAMELLE JOYCE

                                          MEMORANDUM OPINION*

v.      Record No. 1545-22-3                      PER CURIAM
                                          SEPTEMBER 19, 2023

ROANOKE CITY DEPARTMENT
  OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
David B. Carson, Judge

(John S. Koehler; The Law Office of James Steele, PLLC, on brief),
for appellant.

(Timothy R. Spencer, City Attorney; Jennifer L. Crook, Assistant
City Attorney; L. Brad Braford, Guardian ad litem for the minor
child, on brief), for appellee.

Tesha Camelle Joyce (mother) appeals the circuit court's removal, adjudicatory, and

dispositional orders finding that her daughter, C.J., was abused or neglected, removing C.J. from her

care, and transferring C.J.'s custody to the Roanoke City Department of Social Services (the

Department). Mother argues that C.J. was not subject to an imminent threat to life or health to the

extent that severe or irremediable injury would be likely to result if C.J. were returned to her. After

examining the briefs and record in this case, the panel unanimously holds that oral argument is

unnecessary because "the appeal is wholly without merit." Code § 17.1-403(ii)(a); Rule 5A:27(a).

For the following reasons, we affirm the circuit court's judgment.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

On appeal, "we view the evidence in the light most favorable to the prevailing party, in this case, the Department, and grant to it all reasonable inferences fairly deducible from the evidence." *King v. King George Dep't of Soc. Servs.*, 69 Va. App. 206, 210 (2018) (quoting *C. Farrell v. Warren Cnty. Dep't of Soc. Servs.*, 59 Va. App. 375, 420-21 (2012)).

On August 8, 2021, while mother was in North Carolina, her daughter, C.J., suffered a head injury while staying with her maternal grandmother. C.J. was hit in the forehead with a crowbar after a physical altercation between C.J.'s adult brother and her uncle. Mother was uncooperative with the Roanoke City Department of Social Services (the Department) and had significant CPS history, so the investigator took custody of C.J. when no other family members were identified to care for her. The Roanoke City Juvenile and Domestic Relations District Court (the JDR court) entered an emergency removal order on August 9, 2021. On August 12, 2021, the JDR court entered a preliminary removal order and scheduled the matter for an adjudicatory hearing.

On August 27, 2021, Bridgette Joyce, C.J.'s maternal aunt, petitioned the JDR court for custody of C.J. On September 8, 2021, the JDR court found that C.J. was abused or neglected. At the dispositional hearing on October 5, 2021, the JDR court transferred custody of C.J. to Bridgette and approved the foster care plan with the goal of relative placement. The JDR court allowed visitation between C.J. and mother at Bridgette's discretion. The following day, mother filed a petition for custody.

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues mother has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

On October 8, 2021, mother took C.J. without Bridgette's permission and refused to return her. The Department attempted to contact mother by phone and in person at mother's home several times between October and December 2021, but mother was not responsive. On December 8, 2021, mother appeared before the JDR court on her custody petition but refused to state where C.J. was. The JDR court held her in contempt and sentenced her to ten days in jail; she was able to purge her contempt if she provided C.J.'s whereabouts. C.J. was brought to the courthouse, and the Department unsuccessfully attempted to contact Bridgette.

On December 14, 2021, Bridgette was unwilling to continue caring for C.J. because she felt unsafe after mother took C.J. in October without permission. Accordingly, the JDR court entered another preliminary removal order and awarded custody of C.J. to the Department. Mother filed a motion to amend or review that order, asking that the JDR court give her custody of C.J. The court denied mother's motion. On February 4, 2022, the JDR court transferred custody of C.J. to the Department and approved the foster care plan. Mother appealed the JDR court's custody determination, abuse or neglect finding, and dispositional order to the circuit court.

At a July 8, 2022 hearing before the circuit court, C.J.'s early childhood special education teacher testified that while attendance was not compulsory because of C.J.'s age, C.J. attended only 69 days of school out of 170 during the 2020-2021 school year. C.J. also did not attend virtual school sessions. As a result of the absences, C.J. did not receive early intervention speech services or have the opportunity to learn other skills important for her eventual enrollment in kindergarten. C.J. also missed multiple child development center, pediatric gastrointestinal clinic, pediatric surgery clinic, and neurology clinic appointments.

Mother testified that when she was on her way to the hospital for C.J. on August 8, 2021, she had communication difficulties with the Department because her calls were dropping. Mother

claimed that she sought early intervention services for C.J. at the child development center and took C.J. for all her medical appointments. However, mother acknowledged missing some appointments. Mother stated that she decided to homeschool C.J. because of the COVID-19 pandemic and communicated that to C.J.'s teacher.

Mother testified that on October 7 or 8, 2021, Bridgette asked her to come over to style C.J.'s hair. Mother stated that when she arrived, her brother was there and C.J. was scared; mother asked Bridgette to take C.J. home for the weekend, and Bridgette agreed. Mother testified that she was never asked to return C.J. to Bridgette. Mother attempted to enroll C.J. in school several times but could not because she did not have custody of her. Mother testified that Bridgette never attempted to contact her to get C.J. back and that Bridgette told mother that she had a lot going on, to keep C.J., and pray that the Department did not find out mother had C.J. Mother claimed that she never knew she needed to return C.J. to Bridgette until she went to the JDR court in December. Mother acknowledged that the Department had left a letter on her door but she did not call in response because she was afraid.

The circuit court found that C.J. was abused or neglected in mother's care, approved the Department's foster care plan with the goal of return to home, granted custody of C.J. to the Department, and denied mother's request for custody. The court found that mother was not a credible witness. On appeal, mother argues that the court erred when it found that C.J. was subject to an imminent threat to life or health to the extent that severe or irremediable injury would be likely to result if C.J. were returned to her care.

ANALYSIS

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 558 (2018)

(alteration in original) (quoting *Logan v. Fairfax Cnty. Dep't of Hum. Dev.*, 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011) (quoting *Martin v. Pittsylvania Cnty. Dep't of Soc. Servs.*, 3 Va. App. 15, 20 (1986)).

Courts have the authority to remove a child from a parent's custody when the child is alleged to have been abused or neglected. Code §§ 16.1-251 (emergency removal orders), -252 (preliminary removal orders). "[T]he Code contemplates intervention . . . where 'the child would be subject to an imminent threat to life or health to the extent that severe or irreversible injury would be likely to result if the child were returned to or left in the custody of his parent . . . .'" *D. Farrell v. Warren Cnty. Dep't of Soc. Servs.*, 59 Va. App. 342, 364 (2012) (quoting *Jenkins v. Winchester Dep't of Soc. Servs.*, 12 Va. App. 1178, 1183 (1991)). The Department must also prove that it made reasonable efforts to prevent the removal of the child. Code §§ 16.1-251(A)(2), -252(E)(2).

Code § 16.1-228(1) defines an abused or neglected child as any child: "[w]hose parents . . . create[] or inflict[], threaten[] to create or inflict, or allow[] to be created or inflicted upon such child a physical or mental injury other than by accidental means, or create[] a substantial risk of death, disfigurement or impairment of bodily or mental functions." "[T]he statutory definitions of an abused or neglected child do not require proof of actual harm or impairment having been experienced by the child." *D. Farrell*, 59 Va. App. at 364 (quoting *Jenkins*, 12 Va. App. at 1183). Proof by a preponderance of the evidence is the appropriate standard for abuse and neglect cases. *Cumbo v. Dickenson Cnty. Dep't of Soc. Servs.*, 62 Va. App. 124, 130 (2013).

The record supports the court's finding that C.J. was abused or neglected. After the September 2021 abuse and neglect finding, the JDR court transferred custody to Bridgette, with

visitation between C.J. and mother at Bridgette's discretion. Mother was aware that she did not have custody of C.J. because she filed a petition for custody the day after the hearing. Despite the knowledge that she did not have custody of C.J. and could only visit with Bridgette's permission, mother took C.J. two days after filing her petition.

The Department attempted contact with mother several times, but mother kept C.J. from Bridgette and the Department for over two months. Mother only revealed C.J.'s location after the JDR court held her in contempt and she was arrested. During the time that C.J. was with mother, C.J. missed significant developmental opportunities and services at school and several medical appointments. Indeed, it is reasonable to infer that mother was aware of her wrongdoing as she testified that Bridgette told her to "pray that the Department did not find out" mother had C.J. and that she was afraid to speak with the Department after finding the letter on her door.

Once mother returned C.J., the Department made reasonable efforts to prevent C.J.'s removal. The Department attempted to contact Bridgette, but she did not return any calls to the Department. With no other family placement available for C.J., the Department had no less restrictive option than placing C.J. in foster care. Indeed, over a week after C.J.'s return, once the Department made contact, Bridgette informed the Department that she was unwilling to continue caring for C.J. because she felt unsafe as a result of mother's actions.

Finally, although mother testified that she had Bridgette's permission to keep C.J., the court found that mother was wholly not credible. The "credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear the evidence as it is presented." *Simms v. Alexandria Dep't of Cmty. & Hum. Servs.*, 74 Va. App. 447, 470 (2022) (quoting *Harvey v. Flockhart*, 65 Va. App. 131, 146 (2015)). "This Court is bound by the credibility findings of the circuit court." *Tackett v. Arlington Cnty. Dep't of Hum. Servs.*, 62 Va. App. 296, 339 (2013).

CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*