UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Chaney, White and Senior Judge Annunziata
Argued at Fairfax, Virginia


BRANDON LENIR SANDERS

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0124-23-4                      JUDGE VERNIDA R. CHANEY
                                                      DECMEBER 10, 2024
NATASHA SOPHIA OGINSKY


              FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                           Louise M. DiMatteo, Judge

            Mikhail "Misha" Lopez (Lee Lopez Law, PLLC, on briefs), for
            appellant.

            Brandy M. Poss (Barnes & Diehl, P.C., on brief), for appellee.


        Brandon Sanders (father) appeals the circuit court's order granting Natasha Oginsky

(mother) sole legal and physical custody of the couple's minor child.  Father alleges that the circuit

court abused its discretion in awarding mother sole legal and physical custody because it considered

irrelevant factors and assigned insufficient weight to relevant factors in determining the best

interests of the child.  Father also contests the circuit court's visitation ruling, which gave mother

discretion in setting the terms of father's visitation, on the grounds that the ruling improperly

delegated the court's authority in contravention of this Court's holding in *Rainey v. Rainey*, 74

Va. App. 359, 382 (2022).  Finally, father challenges several evidentiary rulings of the circuit court.

For the following reasons, we affirm in part, reverse in part, and remand to the circuit court for

further proceedings not inconsistent with this opinion.

---

        * This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND

We view the evidence in the light most favorable to mother as the prevailing party. *See Rainey*, 74 Va. App. at 368 n.1. When a trial court hears evidence ore tenus, its findings "will not be disturbed on appeal unless they are plainly wrong or without evidence to support them." *Moore v. Joe*, 76 Va. App. 509, 516 (2023) (citing *Gray v. Gray*, 228 Va. 696, 699 (1985)). The parties were married in January 2019. They share one minor child, born in December 2020. Father, an officer in the Air Force, was deployed overseas during mother's pregnancy. Mother resided with her family in Michigan during the pregnancy and for the first six months of the child's life while father was stationed abroad and then briefly in California. In May 2021, mother and the child moved to Virginia to live with father after his temporary assignment to the Pentagon.

Mother was the child's sole caregiver from birth until they reunited with father in Virginia. After the reunion, mother continued to be the child's primary caregiver. She was a stay-at-home parent until January 2022, when she returned to work. While mother stayed home to care for the child, father worked a second, part-time job in addition to his full-time job with the military.

Father was rarely home and only spent about five to ten minutes a day with the child. When he did spend time with the child, he was not attentive. He failed to relock baby gates that he opened or keep choking hazards out of the child's reach. Because of his inattentiveness, the child drank an alcoholic beverage and choked on dog food.

Father was not engaged in daily parenting activities. He never attended the child's medical appointments, did not help set the child's sleep schedule, and never gave the child a bath on his own. When the parties attended family functions or went on outings with the child, father would play with his phone or listen to videos with headphones rather than pay attention to the child.

When the parties lived in Virginia, father often yelled at mother and called her names in front of the child. In one instance, he physically grabbed the child from mother. On another

occasion, he threatened to kill himself and the child if mother tried to leave him. During one argument, father slammed mother's head into a window while yelling at and berating her.

In early 2022, mother became terrified of father because he would yell and scream at her almost daily. After mother discovered that father was cheating on her, she left Virginia with the child and returned to her family in Michigan. Mother filed a divorce action against father in the Arlington Circuit Court a month later.

Father visited Michigan ten times while the couple was separated, but mother only permitted him to see the child on one occasion. The parties agreed that father would have FaceTime visits with the child twice a day pending the divorce proceedings. Despite the agreement, father rarely met with the child, and when he did, his attention was usually focused elsewhere.

After one FaceTime call, father reported to Michigan Child Protective Services (CPS) that he had seen a bruise on the child's face and that he believed mother had beaten the child. After CPS investigated, however, it was ascertained that the child's face had been stained blue from eating blueberries and that mother had not beaten the child. Father denied that his purpose in calling CPS was to harass mother but stated that he would "utilize law enforcement and other authorities to hold [mother] accountable."

The parties convened for a custody and visitation hearing. Mother requested sole legal and primary physical custody with father visiting the child one weekend per month in Michigan. Father requested that mother return to Virginia so the parties could share custody of the child. He proposed a specific visitation schedule so that neither party would go "more than three days" without seeing the child. Alternatively, father requested sole legal and primary physical custody, with mother visiting the child one weekend per month in Virginia.

During the hearing, father testified that during the parties' separation, mother would not permit him to see the child in person without a court order and that she would only permit visits if

he agreed to her proposal to parent the child in Michigan. Father also raised several challenges to the court's admission of evidence, all of which were denied by the court.

At the conclusion of the hearing and evidence, the circuit court awarded sole legal and physical custody to mother. In making this determination, the court reviewed the statutory factors listed in Code § 20-124.3. First, the circuit court noted the child's age, development, and health. Second, the court noted that both parties were young, healthy, and physically and mentally capable of taking care of the child. Third, the court assessed each party's relationship to the child and ability to meet the child's needs, the role that each party had played in the child's care, and the child's relationships with other family members. The court noted here that the evidence is "uncontroverted" that mother is the child's primary caregiver, is very "aware and responsive" to the child's needs, and has bonded strongly with the child. The court added that mother's extended family in Michigan was "essential" to the child's support and development.

The court stated, given the evidence in the record, "The [c]ourt does not find that [father's] explanation of how the parties split childcare duties to be credible." Father claimed he was responsible for 50% of the childcare, however, the court concluded that his testimony was incredible because father testified to working full-time and other work but also having time to spend all day caring for the child. The court said that father worked two jobs while mother was a stay-at-home parent and that, when father was not working, he pursued his personal activities and relationships outside the marriage rather than spending time with the child.

Next, the court assessed each party's propensity to support the other party's relationship with the child and ability to resolve problems regarding the child in an appropriate manner. Here, the court noted that although mother had fled to Michigan with the child and would not permit father to visit, she was justified in moving for her physical and emotional safety. The court said that

father's "controlling and narcissistic" behavior likely contributed to mother's decision to return to Michigan.

The court next noted that father's decision to call CPS on mother was inappropriate and demonstrated his inability to resolve issues regarding the child in a healthy and cooperative manner. Here, the court again noted father's controlling behavior towards mother.

Finally, the court reasoned that, although each party had some "anger issues" towards the other, "the credible weight of the evidence" shows that father's behavior towards mother was abusive. The court noted the instability and lack of trust in the relationship, father's threats and verbally aggressive behavior towards mother, and the fact that it was not physically or emotionally "healthy" for mother to live in Virginia.

The court then concluded its review by considering a few other factors. Here, the court noted father's poor credibility and history of lying to mother, and again noted his controlling behavior. The court asserted that being controlling is "unsafe and unsustainable when rearing children . . . that's going to cause a whole lot of other problems if that continues."

After awarding sole custody to mother, the court made the following oral ruling and remarks regarding visitation:

> THE COURT: When I give someone sole legal and physical custody, in my view it means I trust them to make the right decisions for this child. And so I am less inclined to set a visitation schedule under those circumstances. So what that means is, and I want you to understand this when I say this to you, [father] is [the child's] father and she needs to have a relationship with him. And I understand that relationships depend upon the ability of each of those parties to engage in, appropriately and safely. But I also understand that sometimes it has to happen, even if you're not a hundred percent comfortable with it. But I'm not going to set a visitation schedule. Again, because I trust that I'm giving you sole legal custody you are going to be responsible and make the right decision for [the child]. Okay. So I'm not setting it.

Does everyone understand that? That means, though, what's the expression "with great power comes great responsibility." If you don't exercise it well, it could be problematic. But I don't expect that. I don't have any actual concerns about that, which if I did, I wouldn't give you sole legal custody. Do you understand that?

[MOTHER]: Uh-huh.

THE COURT: Okay. So in this circumstance, she's young. She's too young to be going back and forth between two jurisdictions this far apart. It makes no sense to me. And because I agree that this is the right outcome, I'm going to leave it at that. And I don't think anything else needs to be done.

The circuit court then issued a final written custody and visitation order entered December 22, 2022. The order stated that mother would have sole legal and physical custody of the child, but that "nothing in this order shall bar the [p]arties from exercising agreed-to visitation between father and the minor child." The order also stated that a "copy of the transcript of [the circuit court's ruling] shall be incorporated by reference into this [order] as though fully set forth herein . . . ." Father noted his objections to the order and timely appealed.

ANALYSIS

"We review the trial court's decisions on custody and visitation for an abuse of discretion." *Rainey*, 74 Va. App. at 376. "Under this standard, the Court views the evidence in the light most favorable to the prevailing party and does not 'retry the facts or substitute [its] view of the facts for [that] of the trial court.'" *Armstrong v. Armstrong*, 71 Va. App. 97, 102 (2019) (alterations in original) (quoting *Congdon v. Congdon*, 40 Va. App. 255, 266 (2003)). "If 'evidence in the record supports the trial court's ruling and the trial court has not abused its discretion, its ruling must be affirmed on appeal.'" *Id.* (quoting *Brown v. Brown*, 30 Va. App. 532, 538 (1999)).

On appeal, father argues that the circuit court abused its discretion in awarding mother sole legal and physical custody because it considered irrelevant factors and assigned insufficient weight to relevant factors in determining the best interests of the child. Father also contends that the circuit

- 6 -

court improperly delegated its authority to set the terms of visitation to mother in contravention of this Court's holding in *Rainey*. Finally, father asserts that the circuit court erred in admitting certain evidence over his objections. We affirm the circuit court's award of sole custody to mother but agree with father that the court's visitation ruling contravened *Rainey* and therefore reverse the lower court's visitation ruling. On remand, we direct the court to make a new visitation ruling that does not improperly delegate the court's authority.

### I. The circuit court did not abuse its discretion by awarding mother sole custody.

Father contends that the circuit court considered irrelevant factors and failed to sufficiently consider relevant factors in awarding mother sole legal and physical custody of the child. We disagree and hold that the circuit court appropriately considered the statutory factors listed in Code § 20-124.3 in determining custody.

"In matters of custody, visitation, and related childcare issues, the court's paramount concern is always the best interests of the child." *Wynnycky v. Kozel*, 71 Va. App. 177, 193 (2019) (quoting *Bedell v. Price*, 70 Va. App. 497, 504 (2019)). Code § 20-124.3 lists ten factors that the court "shall consider" in determining a child's best interests. Although a circuit court must consider the factors listed in Code § 20-124.3, it determines how to weigh the factors and "is not 'required to quantify or elaborate exactly what weight or consideration it has given to each[.]'" *Id.* at 201 (alteration in original) (quoting *Brown*, 30 Va. App. at 538). "On appeal, we do not reweigh the factors to see if we would have reached a different conclusion; rather, so 'long as evidence in the record supports' the circuit court's determination and it 'has not abused its discretion, its ruling must be affirmed on appeal.'" *Id.* (quoting *Brown*, 30 Va. App. at 538).

Here, the circuit court made its custody determination after considering nine[1] of the ten statutory factors enumerated in Code § 20-124.3. First, the court noted the child's age, health, and both parties' age, health, and physical and mental capacity. *See* Code § 20-124.3(1)-(2). The court then properly assessed each party's relationship to the child and ability to meet the child's needs, the role each party played in the child's upbringing to date, and the child's relationships with other family members. *See* Code § 20-124.3(3)-(5). The court determined that the credible evidence in the record showed that mother was the child's primary caregiver and was very responsive to the child's needs, that the child's extended family in Michigan was integral to her development, and that father, by contrast, had been a largely absent and inattentive parent to the child.

Next, the circuit court considered each party's propensity to support the other party's relationship with the child and ability to resolve problems regarding the child appropriately. *See* Code § 20-124.3(6)-(7). Here, the court found that father demonstrated his unwillingness to support mother's relationship with the child and his inability to resolve problems appropriately by calling CPS on mother. While the court found that mother had also failed to support father's relationship with the child by fleeing with the child to Michigan, it noted that her actions were justified for her physical and emotional safety.[2]

Next, the court noted that there was a history of family abuse. *See* Code § 20-124.3(9). Here, the court determined that the "credible weight of the evidence" showed that father was verbally abusive and threatening towards mother and that due to his behavior it was not "healthy"

---

[1] Although Code § 20-142.3(8) describes the "reasonable preference" of the child as a factor that circuit courts should consider in determining custody, the court in this case decided that consideration of this factor would not be appropriate given the child's age.

[2] Although the circuit court did not expressly disregard mother's failure to support father's relationship with the child due to father's abusive behavior towards her, Code § 20-124.3(9) provides that "the court may disregard [this factor]" where the court "finds [a history or act of family abuse]."

for mother to live in Virginia. Finally, the court considered other factors that it believed relevant to the child's best interests in this case. *See* Code § 20-124.3(10) (the court is allowed to consider "such other factors as the court deems necessary and proper to the determination"). One such factor the court considered pursuant to Code § 20-124.3(10) was that father's controlling behavior is not conducive to child-rearing.

Father objects specifically to the circuit court's description of him as "controlling and narcissistic," arguing that this finding was without evidentiary support and irrelevant. The "credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." *Simms v. Alexandria Dep't of Cmty. & Hum. Servs.*, 74 Va. App. 447, 470 (2022) (quoting *Harvey v. Flockhart*, 65 Va. App. 131, 146 (2015)). "This Court is bound by the credibility findings of the circuit court." *Tackett v. Arlington Cnty. Dep't of Hum. Servs.*, 62 Va. App. 296, 339 (2013). Considering the deference we must give to the circuit court's consideration of witness testimony and other evidence in the record, we cannot say here that the court abused its discretion in its description of father.

Nor was the court's description irrelevant to the analysis of the statutory factors in Code § 20-124.3. Specifically, the court determined that father's controlling behavior justified mother's decision to flee to Michigan with the child, that it showed his inability to resolve problems regarding the child in a healthy and cooperative manner, and that it was potentially detrimental to child-rearing. Therefore, the circuit court's concerns about father's controlling behavior were relevant to the determination of the child's best interests under Code § 20-124.3, and the court did not abuse its discretion by considering the behavior in its analysis.

Father also claims that the circuit court found that mother is unable to return to Virginia and argues that the evidence does not support this finding. But the court did not actually make this

finding. Rather, it determined that it was not "healthy" for mother to return to Virginia because of father's abuse and lack of family support. Because this factual determination is supported by the evidence and is within the circuit court's discretion, we will not set aside the circuit court's finding. *See Armstrong*, 71 Va. App. at 102.

The record establishes that the circuit court properly considered the Code § 20-124.3 factors and the child's best interests in determining custody. We, therefore, find that the circuit court did not err by awarding sole legal and physical custody to mother.

II. The circuit court improperly delegated its authority to set the terms of visitation to mother.

Father contends that the circuit court's oral ruling[3] regarding visitation improperly delegated authority to mother to set the terms of father's visitation in contravention of this Court's holding in *Rainey*. Mother, on the other hand, argues that the court did not rule on the visitation issue and instead left the terms of visitation to the parties to decide. For the following reasons, we agree with father that the court improperly delegated its authority to adjudicate visitation terms to mother.

In its oral ruling, the circuit court stated, "When I give someone sole legal and physical custody, in my view, it means I trust them to make the right decisions for this child . . . ." The court's references to "sole legal and physical custody" here indicate that it is solely addressing mother rather than both parties, and its declaration that it "trusts [mother] to make the right decisions for the child" indicates that it is entrusting mother with discretionary power to make decisions regarding visitation. Further, the court told mother that "with great power comes great responsibility," strongly suggesting that she has been given broad discretion to set the terms of visitation.

---

[3] The transcript of the court's oral ruling was properly incorporated by reference into the court's written custody and visitation order and is therefore part of the order. *See Newman v. Newman*, 42 Va. App. 557, 563 (2004) (holding that documents incorporated by reference into a formal court order become part of the order and are binding on the parties).

In *Rainey*, this Court overturned a circuit court's visitation ruling which permitted the father to determine the terms of the mother's visitation, including the power to withhold in-person visitation altogether if the father believed it was appropriate.[4] In so doing, we held that Code § 20-124.2(A)'s mandate that the circuit court "provide prompt adjudication, upon due consideration of all the facts, of custody and visitation arrangements . . ." prohibited the court from delegating this function to a party. *Rainey*, 74 Va. App. at 383 (citing Code § 20-124.2(A)). We explained that such a delegation of power was problematic because "particularly in child custody and visitation cases, parties are likely to have difficulty communicating and seeing past their inherent biases." *Id.* at 387. Moreover, "[l]eaving the sole power [to determine] visitation with such a party invites abuse and inequity." *Id.*

The *Rainey* decision rested on an interpretation of Code § 20-124.2(A)'s requirement that the circuit court adjudicate "custody and visitation arrangements." This Court has interpreted "visitation arrangements" for the purposes of Code § 20-124.2(A) to mean not only the decision to permit visitation, but all the "specifics" of visitation, including the setting of a particular visitation schedule, *Burgess v. Burgess*, No. 0946-20-1, slip op. at 5-6, 2021 Va. App. LEXIS 42, at *6-7 (Mar. 16, 2021), whether or not visitation is to be supervised, *Hill v. Hill*, Nos. 0062-22-3, 0316-22-3, slip op. at 12-13, 2023 Va. App. LEXIS 86, at *18 (Feb. 7, 2023), and who may be

---

[4] The mother in *Rainey* had not been permitted any in-person visitation at all prior to the circuit court's order and was only permitted to write letters to her children. The court's order gave the father sole discretion—after consulting with the children's therapists—to determine whether the mother would be permitted to visit the children in person in a therapeutic setting, when she would be permitted supervised visitation outside the therapeutic setting, and to choose a supervisor at the mother's expense. 74 Va. App. at 382. Following the entry of this order, the father did not permit the mother to see the children at all. *Id.* at 388.

- 11 -

present during a visitation, *Martin v. Martin*, No. 0013-22-3, slip op. at 12-13, 2022 Va. App.

LEXIS 663, at *16 (Dec. 20, 2022).[5]

Here, the circuit court strongly implied that mother's discretion does not go as far as to deny

father visitation altogether by admonishing that "[the child] needed to have a relationship with

[father]" even if mother was not "100 percent comfortable with it." The court's warning to mother

that it "could be problematic" if she did not exercise her powers well also strongly implied that the

court retained the ability to modify the order should mother make "problematic" decisions regarding

visitation. Nevertheless, we find that the non-delegation principle in *Rainey* applies to delegations

of authority that fall short of the nearly unfettered discretion awarded in that case.[6]

In *Rainey* this Court held that the circuit court's ability to modify a custody and visitation

order in the future does not mean this Court should affirm an improper delegation of the circuit

court's authority. 74 Va. App. at 388-89. We explained that, even where the circuit court's

---

[5] "Although not binding precedent, unpublished opinions can be cited and considered for their persuasive value." *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 568 n.7 (2018) (quoting *Otey v. Commonwealth*, 61 Va. App. 346, 350 n.3 (2012)); *see also* Rule 5A:1(f).

[6] A case outside of our jurisdiction may also be instructive here. In *R.H. v. M.H.*, 296 A.3d 243, 250 (Conn. App. Ct. 2023), the Connecticut Court of Appeals was confronted with a similar scenario in which a circuit court ordered supervised visitation for the mother in that case, but delegated authority to the father to determine whether and when she would be permitted unsupervised visitation. In overruling the lower court's determination, the appeals court relied on our decision in *Rainey* to find that such a delegation is improper where a state law places the responsibility to make contested visitation decisions on the judiciary. *See id.* at 259-60. The Connecticut Supreme Court upheld the Connecticut Court of Appeals's reasoning and remanded the case back to the trial court. *See R.H. v. M.H.*, 2024 Conn. LEXIS 190, at *29 (Aug. 14, 2024) ("The trial court's order is reversed insofar as that court's modification of custody was based on a determination that a nonjudicial entity may suspend the defendant's visitation rights with R and the case is remanded for further proceedings solely as to that issue.").
Connecticut General Statute 46b-56(a) gives sole authority to the trial court to "make or modify any proper order regarding the custody, care, education, visitation and support of the children" if it has jurisdiction to do so. *See* Conn. Gen. Stat. 46b-56(a). The Connecticut Court of Appeals found that this law is "substantially similar" to Virginia's law governing custody and visitation. *R.H.*, 296 A.3d at 261.

visitation ruling does not completely deprive a party of further legal recourse to modify the ruling under Code § 20-108, "forcing [the party] to exhaust more time and resources to litigate [the issue of visitation] is not equitable relief for a party that was entitled to judicial resolution of visitation in the first place." *Id.* at 389. Therefore, where an improper delegation was made, this Court requires remand. *Id.*

III. The circuit court's evidentiary rulings, if error, were harmless.

Father additionally challenges several evidentiary rulings of the circuit court. First, he challenges the court's admission of a neighbor's testimony that father had told a police officer that the neighbor was peering in through his windows on the grounds that it is hearsay, not falling within an exception. Next, he challenges the court's admission of a liquor store receipt showing that he was having an affair at a local hotel as inadmissible hearsay. Finally, he contests the court's admission of his brother's testimony that father had been in a gang as a child on the grounds that the information is irrelevant to the present proceedings.

Assuming without deciding that the circuit court erred by making these rulings, we hold that these errors were harmless. An appellate court "will not reverse a trial court for evidentiary errors that were harmless to the ultimate result." *Carter v. Commonwealth*, 293 Va. 537, 544 (2017) (quoting *Shifflett v. Commonwealth*, 289 Va. 10, 12 (2015)). An error may be found harmless when "overwhelming" evidence supports the circuit court's "ultimate holding." *Jenkins v. Winchester Dep't of Soc. Servs.*, 12 Va. App. 1178, 1186 (1991).

Here, the record shows that the circuit court did not rely on any of the specific evidentiary matters that father raises in determining custody and visitation. Further, the other evidence in the record—whose admission is uncontested by father—overwhelmingly supports the circuit court's decision to award sole legal and physical custody to mother. We therefore find that the circuit court did not abuse its discretion in its evidentiary rulings.

IV.  Neither party is entitled to attorney fees and costs.

Both parties request an award of attorney fees and costs incurred on appeal.  "This Court has discretion to grant or deny attorney[] fees incurred on appeal."  *Stark v. Dinarany*, 73 Va. App. 733, 757 (2021).  "In making such a determination, the Court considers all the equities of the case."  *Id.*; *see also* Rule 5A:30(b).  Having reviewed and considered the record, we find that father's appeal was not frivolous or entirely without merit, and neither party has shown financial need or inequity.  *See* Rule 5A:30(b).  We, therefore, deny both parties' requests for attorney fees and costs.

CONCLUSION

For the foregoing reasons, we find that the circuit court did not abuse its discretion in awarding mother sole legal and physical custody.  However, we find that the court's visitation ruling improperly delegated the court's authority in contravention of this Court's holding in *Rainey*.  We therefore affirm the circuit court's award of sole custody to mother but reverse the circuit court's visitation ruling and remand the visitation issue to the lower court for further proceedings not inconsistent with this opinion.

*Affirmed in part, reversed in part, and remanded.*